```
 1                 UNITED STATES DISTRICT COURT

 2             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4

 5
      UNITED STATES OF AMERICA,        .
 6                                     .
                PLAINTIFF,             . NO. 13-CR-3921
 7                                     .
                    V.                 . NOVEMBER 17, 2014
 8                                     .
      MICHAEL LUSTIG,                  . 9:43 A.M.
 9                                     .
                DEFENDANT.             . SAN DIEGO, CALIFORNIA
10     . . . . . . . . . . . . . . .   .

11

12

13         TRANSCRIPT OF SENTENCING WITH PRESENTENCE REPORT
              BEFORE THE HONORABLE ROGER T. BENITEZ
14                 UNITED STATES DISTRICT JUDGE

15      APPEARANCES:

16

17      FOR THE PLAINTIFF:        U.S. ATTORNEY'S OFFICE
                                  SOUTHERN DISTRICT OF CALIFORNIA
18                                BY:  ALESSANDRA SERANO, ESQ.
                                  880 FRONT STREET, ROOM 6293
19                                SAN DIEGO, CALIFORNIA  92101

20      FOR THE DEFENDANT:        COLEMAN, BALOGH & SCOTT, LLP
                                  BY:  TIMOTHY SCOTT, ESQ.
21                                1350 COLUMBIA STREET, SUITE 60
                                  SAN DIEGO, CALIFORNIA  92101
22

23      COURT REPORTER:          DEBORAH M. O'CONNELL, RPR, CSR
                                  333 WEST BROADWAY, SUITE 420
24                                SAN DIEGO, CALIFORNIA, 92101

25
      REPORTED BY STENOTYPE, TRANSCRIBED BY COMPUTER
```

1          SAN DIEGO, CALIFORNIA, NOVEMBER 17, 2014, 9:43 A.M.

2                              * * * *

3

4          THE CLERK:  THREE ON CALENDAR, CASE NO. 13-CR-3921,

5    USA VS. MICHAEL LUSTIG, SENTENCING WITH A PRE-SENTENCE REPORT.

6          MR. SCOTT:  GOOD MORNING, YOUR HONOR.  TIM SCOTT, FOR

7    MR. LUSTIG.  HE IS IN CUSTODY AND SHOULD BE WITH US SHORTLY.

8          MS. SERANO:  ALESSANDRA SERANO, ON BEHALF OF THE

9    UNITED STATES.  GOOD MORNING, YOUR HONOR.

10         THE COURT:  ALL RIGHT.  THIS MATTER IS SET FOR

11   SENTENCING THIS MORNING.  I NOTE UNDER BOOKER THE GUIDELINES

12   ARE ADVISORY.  I WILL IMPOSE SENTENCE BASED ON 3553(A) FACTORS.

13   SO LET'S SEE, IT APPEARS THE GOVERNMENT IS RECOMMENDING A

14   SENTENCE OF 108 MONTHS.

15       MR. SCOTT, YOU'VE RECOMMENDED A SENTENCE OF 36 MONTHS.

16       AND PROBATION IS RECOMMENDING A SENTENCE OF 120 MONTHS.  I

17   GUESS I SHOULD INDICATE FOR THE RECORD, I'VE NOTED THE

18   OBJECTIONS THAT HAVE BEEN FILED.  WE'LL ADDRESS THOSE LATER ON,

19   ONE BY ONE.

20       YOU KNOW, MY TENTATIVE IS TO IMPOSE THE 120 MONTHS

21   RECOMMENDED BY PROBATION.

22       SO THAT IS MY TENTATIVE, MR. SCOTT.

23         MR. SCOTT:  WOULD YOU LIKE ME TO TAKE UP THE

24   OBJECTIONS FIRST, YOUR HONOR?

25         THE COURT:  SURE, SURE.  WHY DON'T WE DO THAT.

1          MR. SCOTT:  THE GOVERNMENT FILED SOME, AND WE FILED

2     SOME AS WELL.  WHICH WOULD YOU LIKE TO TAKE UP FIRST?

3          THE COURT:  DOESN'T MATTER.  TAKE THEM IN WHATEVER

4     ORDER YOU'D LIKE.

5          MR. SCOTT:  OKAY.  AS TO THE FIRST ONE, THE -- I

6     GUESS THE DEFENDANT'S OBJECTION TO THE FIRST ONE WAS PARAGRAPH

7     12 OF THE PRE-SENTENCE REPORT.  AND THE COURT MIGHT RECALL FROM

8     MOTIONS IN LIMINE IN THIS CASE THAT THERE WAS A REPORT FROM

9     SOME 30 YEARS AGO.

10          THE COURT:  WOULD IT HELP IF I TOLD YOU I'M NOT

11     CONSIDERING THAT, TAKING THAT INTO ACCOUNT?

12          MR. SCOTT:  IT CERTAINLY WOULD.  AND IT WOULD HELP ME

13     EVEN MORE IF THE COURT WERE TO STRIKE IT FROM THE PRE-SENTENCE

14     REPORT.  BECAUSE EVEN THOUGH THE COURT MIGHT NOT CONSIDER IT IN

15     SENTENCING, I THINK THIS COULD VERY WELL HAVE IMPACT ON

16     MR. LUSTIG AND HIS CUSTODIAL SITUATION IN PROGRAMMING AND

17     THINGS HE'S ELIGIBLE FOR OR NOT ELIGIBLE FOR WITH THE BUREAU OF

18     PRISONS.  AND SO I THINK --

19          THE COURT:  LET ME ASK THE GOVERNMENT.

20       DOES THE GOVERNMENT HAVE ANY OBJECTION TO MY STRIKING THAT

21     FROM THE PROBATION REPORT?

22          MS. SERANO:  WE DO, YOUR HONOR.

23          THE COURT:  ALL RIGHT.

24          MS. SERANO:  AND JUST FOR THE RECORD, I DID SPEAK TO

25     MR. SCOTT BRIEFLY BEFORE THE DEFENDANT WAS BROUGHT OUT.

1  KRISTIN PAULEY IS HERE TODAY.  SHE WOULD LIKE TO MAKE A

2  STATEMENT.  BECAUSE THE DEFENDANT PUT THIS AT ISSUE, SHE IS

3  HERE, PREPARED TO TELL THE COURT ABOUT HER EXPERIENCE WITH

4  MR. LUSTIG.  ALBEIT, I KNOW IT HAPPENED MANY, MANY YEARS AGO.

5  BUT SHE IS PREPARED TO MAKE A STATEMENT TODAY IF YOUR HONOR IS

6  SO INCLINED TO HEAR.

7      I JUST THINK IT SHOULD BE INCLUDED IN THE PRE-SENTENCE

8  REPORT.  BECAUSE IT DEMONSTRATES A PATTERN AND A HISTORY OF

9  WHAT THIS INDIVIDUAL IS INVOLVED IN.  OBVIOUSLY, WE STAND BY

10  THE 108 MONTHS.  BUT IT -- IT WILL INFORM THE PRISON AND

11  PROBATION OF THE TYPE OF PERSON HE IS.  THIS IS NOT A ONE-TIME

12  THING.

13          THE COURT:  OKAY.

14          MR. SCOTT:  YOUR HONOR, I THINK WE HAVE A PROBLEM.

15          THE COURT:  WHAT IS THAT?

16          MR. SCOTT:  I THINK THE GOVERNMENT HAS BREACHED THE

17  PLEA AGREEMENT BY REACHING OUT TO THIS PERSON, BY BRINGING THEM

18  TO COURT, AND BY DESCRIBING IN ITS OWN WORDS A PATTERN OF

19  CONDUCT AND PAST ACTS.  I CITE TO THE CASE UNITED STATES VS.

20  MORALES-HEREDIA.  THIS WAS AN OCTOBER 8, 2014 CASE, OUT OF THIS

21  DISTRICT.  WHERE THE GOVERNMENT IN THAT CASE CITED A HISTORY

22  AND A PATTERN OF CRIMINALITY.  AND ALTHOUGH IT DIDN'T AMOUNT TO

23  THE SAME WORDS THAT THE GOVERNMENT JUST DID, WE STAND BY OUR

24  RECOMMENDATION, THAT COURT REVERSED, HELD THAT THERE WAS

25  BREACH, AND SAID THE GOVERNMENT IMPLICITLY UNDERMINED THE PLEA

1  AGREEMENT.

2       NOW NONE OF THESE FACTS WERE IN THE PLEA AGREEMENT.  THESE

3  FACTS WERE ALREADY EXCLUDED BY THIS COURT FROM THE TRIAL.  I

4  LET GO OF THE FACT THAT THE GOVERNMENT GAVE THIS INFORMATION TO

5  PROBATION.  I THINK THAT ARGUABLY UNDER THE PLEA AGREEMENT,

6  THEY HAVE A RIGHT TO SHARE FULL INFORMATION WITH PROBATION.

7  BUT WHEN THEY THEN REACH OUT, AFFIRMATIVELY BRINGING THE

8  ALLEGED VICTIM TO COURT, PRESENTED AS SOMETHING THAT REALLY DID

9  HAPPEN, AND ADVOCATE THAT IT IS PART OF A HISTORY AND PATTERN,

10  THAT IS A BREACH UNDER THE LAW.  SO I'M ASKING FOR SPECIFIC

11  PERFORMANCE AND, UNFORTUNATELY, TRANSFER TO A DIFFERENT JUDGE.

12           THE COURT:  THAT IS NOT GOING TO HAPPEN.

13           MS. SERANO:  YOUR HONOR, I'M NOT CHANGING THE

14  SENTENCING RECOMMENDATION.  I STILL BELIEVE 108 MONTHS IS THE

15  APPROPRIATE SENTENCE.  BUT WHEN MR. SCOTT DISPUTES WHETHER THAT

16  HAPPENED OR NOT, I THINK WE HAVE AN OBLIGATION, AND AN

17  OBLIGATION TO THE COURT, TO PRESENT ALL OF THE EVIDENCE.  NOW

18  WHETHER YOUR HONOR WANTS TO CONSIDER IT OR NOT, IS ENTIRELY UP

19  TO THE COURT.  BUT THAT IS ONE OF THE REASONS WHY THE

20  GOVERNMENT CAME UP WITH THE 108-MONTH SENTENCE, WAS BASED ON

21  ALL OF THE CHARACTERISTICS OF THE DEFENDANT, INCLUDING THIS.

22  SO I UNDERSTAND WHERE MR. SCOTT IS COMING FROM --

23           THE COURT:  THIS IS THE PROBLEM WITH OUR SYSTEM.  IT

24  HAS ALWAYS TROUBLED ME.  IT HAS ALWAYS, ALWAYS TROUBLED ME.

25  AND THAT IS THIS:  VERY OFTEN, VERY OFTEN THE GOVERNMENT IS PUT

1   INTO A POSITION THAT SORT OF PUTS IT IN AN ADVERSARIAL ROLE

2   WITH THE COURT.  WHO REPRESENTS THE COURT?  WHO IS HERE TO

3   ADVOCATE FOR THE COURT?  WHO IS HERE IS HELP DECIDE WHAT IS A

4   FAIR, JUST, ADEQUATE SENTENCE TO IMPOSE?

5       IF THE GOVERNMENT CANNOT SPEAK TO ASSIST THE COURT IN

6   DECIDING WHAT A FAIR, JUST, ADEQUATE SENTENCE SHOULD BE, WHO IS

7   GOING TO DO IT?  IT SEEMS LIKE WHAT WE'VE DONE IS, WE'VE

8   CREATED SORT OF A *WIZARD OF OZ* SITUATION, WHERE WE SORT OF HAVE

9   AN ALTERNATE REALITY.

10      I READ THAT CASE, MR. SCOTT.  I READ IT.  I UNDERSTAND

11  WHAT THAT CASE SAYS.  BUT I CAME IN TO -- AS I INDICATED, I

12  KNEW WHAT MY SENTENCE WAS LIKELY TO BE.  PROBATION PRESENTED ME

13  WITH INFORMATION.  THAT IS THEIR JOB.  IF THE LAW IS -- AND

14  MAYBE IT SHOULD BECOME THE LAW, AND MAYBE WE SHOULD MAKE -- YOU

15  KNOW, GET RID OF SOME OF THIS SOMEWHAT SUPERFLUOUS STUFF.

16  MAYBE WHAT SHOULD HAPPEN FROM NOW ON IS, THAT A DEFENDANT

17  ENTERS A PLEA, THE DEFENDANT STATES THE FACTS ON THE RECORD

18  THAT HE OR SHE ADMITS, AND THAT IS ALL THAT IS EVER PRESENTED

19  TO THE COURT, NOTHING ELSE.  NO MORE PROBATION REPORTS.  WE CAN

20  SAVE A LOT OF MONEY IN PROBATION REPORTS.  WE CAN SAVE A LOT OF

21  MONEY IN INVESTIGATIONS.

22      SO THE ONLY THING THAT THE COURT CAN CONSIDER WHEN

23  IMPOSING SENTENCE ARE THE FACTS THAT THE DEFENDANT HAS ADMITTED

24  AT THE TIME THAT HE OR SHE ENTERS THE PLEA.  IT WILL MAKE

25  PLEAS, SENTENCINGS A LOT QUICKER, A LOT EASIER.  BUT THAT'S NOT

1    WHAT HAPPENED HERE.  WHAT HAPPENED HERE IS THAT PROBATION

2    PROVIDED ME WITH INFORMATION THAT IS IN THE PROBATION REPORT.

3    THAT IS THEIR JOB, AND THAT IS WHAT THEY'RE SUPPOSED TO DO.  I

4    TOLD YOU I'M NOT TAKING IT INTO ACCOUNT.  IT DOESN'T MATTER TO

5    ME.  AS FAR AS I'M CONCERNED, I'M NOT INCLINED TO IMPOSE A

6    SENTENCE BECAUSE OF THAT.  IT DOESN'T AFFECT MY DECISION

7    MAKING.  I'LL EXPLAIN MY REASONS FOR THE DECISION LATER ON.

8        BUT, YOU KNOW, WHAT WE'VE DONE NOW IS, WE'VE CREATED A

9    SITUATION WHERE IF THE GOVERNMENT -- IF THE GOVERNMENT GETS UP

10   AND SNEEZES, WE NOW HAVE A CLAIM BY DEFENSE COUNSEL OF A BREACH

11   OF THE PLEA AGREEMENT.  AND THIS IS REALLY NOTHING MORE THAN AN

12   EFFORT TO DISQUALIFY JUDGES, PARTICULARLY ONCE THEY'VE STATED A

13   TENTATIVE DECISION.  IT'S JUST SUDDENLY I'VE -- I'M

14   EXPERIENCING A SENIOR MOMENT, HAVING BEEN A STATE COURT JUDGE

15   FOR MANY YEARS, YOU KNOW, THERE IS THIS PREEMPTIVE

16   QUALIFICATION THAT THEY HAVE IN CALIFORNIA, WHICH YOU USE

17   WHENEVER YOU DON'T THINK THAT THE JUDGE IS THE JUDGE YOU WANT.

18   AND THAT IS WHAT WE'VE DONE.

19       IF MS. SERANO HAD SAID NOTHING, IF SHE HAD SAID ABSOLUTELY

20   NOTHING, AND I WOULD HAVE IMPOSED 120 MONTHS, WHAT WOULD YOU

21   HAVE TO ARGUE ABOUT?  SO THE FACT THAT SHE COMES IN HERE AND

22   SHE SAYS THAT SHE HAS A VICTIM WHO WANTS TO SPEAK TO ME, HOW

23   DOES THAT CHANGE ANYTHING?  I DON'T UNDERSTAND IT.  SO IT'S NOT

24   GOING TO HAPPEN.  I'M NOT GOING TO DISQUALIFY MYSELF.  IT WILL

25   GIVE YOU SOMETHING ELSE TO TAKE UP ON APPEAL ANYWAY.  I KNOW

1    YOU'RE -- YOU'RE A GOOD WRITER, AND YOU'RE A PERSUASIVE LAWYER,

2    AND YOU'LL -- IT WILL GIVE YOU SOMETHING ELSE TO ARGUE ABOUT.

3    BUT I'M NOT ABOUT TO DISQUALIFY MYSELF, AND I DON'T BELIEVE

4    THERE HAS BEEN A BREACH OF THE PLEA AGREEMENT.

5        SO THAT TAKES CARE OF THAT.  NOW WAS THERE ANYTHING ELSE

6    YOU WANTED TO SAY?

7            MR. SCOTT:  THERE WAS, YOUR HONOR.  AND MAYBE -- AND

8    I PROBABLY DIDN'T MAKE MYSELF CLEAR.  THIS IS NOT IN THE SPIRIT

9    OF A RECUSAL MOTION, SUGGESTING THAT THE COURT IS IN SOME WAY

10   BIASED OR ANYTHING LIKE THAT.  THIS IS SIMPLY THE REMEDY THAT

11   THE NINTH CIRCUIT PRESCRIBES WHEN THERE IS A BREACH.  AND THE

12   ANSWER TO THE COURT'S QUESTION, WHO SPEAKS FOR THE COURT, WHO

13   REPRESENTS THE COURT.

14           THE COURT:  YEAH.

15           MR. SCOTT:  THE ANSWER IS, THIS NICE LADY SITTING

16   HERE TO THE COURT'S RIGHT.

17           THE COURT:  SHE IS NOT A LAWYER.

18           MR. SCOTT:  AND THE PROBATION OFFICE SPEAKS FOR THE

19   COURT, GATHERS THE INFORMATION, PRESENTS IT TO THE COURT IN A

20   PRE-SENTENCE REPORT.  I FILED WRITTEN OBJECTIONS TO THIS VERY

21   CONTENT.  IT WOULD THEN BE INCUMBENT UPON PROBATION IF THEY

22   FELT IT WAS APPROPRIATE TO REACH OUT, TO BRING SOMEBODY TO

23   COURT, NOT THE GOVERNMENT AS AN ADVOCATE.

24           THE COURT:  BUT IF THERE IS A DISPUTE, MR. SCOTT --

25   AND I'VE ENCOUNTERED THIS SEVERAL TIMES, AND I'VE ALWAYS FOUND

1    MYSELF IN A BIT OF A QUANDARY.  IF THERE IS A DISPUTE ON AN

2    ISSUE THAT, SAY, PROBATION RAISES, RIGHT, SOMETIMES WE HAVE TO

3    TAKE TESTIMONY.  IT HAPPENS FROM TIME TO TIME, WE HAVE TO TAKE

4    TESTIMONY, RIGHT.

5            MR. SCOTT:  THAT HAPPENS SOMETIMES.

6            THE COURT:  SO WHO EXAMINES THE WITNESS?  WHO

7    CROSS-EXAMINES THE WITNESS?  THE PROBATION OFFICER?  ARE THEY

8    TRAINED TO DO THAT?  ARE THEY LICENSED TO PRACTICE LAW?  I

9    DON'T KNOW.  SO THIS ODDITY OF OUR SYSTEM -- AND IT IS AN

10   ODDITY I'VE LOOKED AT FOR -- IT HAS TROUBLED ME FOR A LONG

11   TIME.  THE ONLY PEOPLE THAT REALLY CAN ADVOCATE, HELP THE

12   COURT, ONCE THEY HEAR WHAT THE COURT'S CONCERNS ARE, RIGHT, THE

13   ONLY PEOPLE THAT ARE TRAINED AND AUTHORIZED TO DO THAT IS THE

14   GOVERNMENT.

15     MAYBE WE SHOULD HAVE A THIRD -- MAYBE WE SHOULD HAVE A

16   THIRD SET OF LAWYERS.  WE CREATE A NEW OFFICE, A NEW AGENCY,

17   AND IT WOULD BE COUNSEL TO THE COURT, YOU KNOW.  WHAT DO YOU

18   THINK?

19            MR. SCOTT:  PERHAPS.

20            THE COURT:  PERHAPS.  GREAT IDEA, HUH.

21     AS I SAID BEFORE, I WAS WILLING TO STRIKE IT FROM THE

22   PERSPECTIVE THAT IT DOES -- IT IS NOT GOING TO MAKE ANY

23   DIFFERENCE TO MY SENTENCE.

24     SO WE'VE HEARD YOUR OBJECTION.  SO WHAT ELSE DO YOU WANT

25   TO TALK ABOUT?

1        MR. SCOTT:  THE OTHER OBJECTION I THINK HAS ALREADY

2   BEEN NOTED BY THE PRE-SENTENCE REPORT.  IT WAS SIMPLY AS TO

3   MR. LUSTIG'S FATHER'S LONGEVITY.

4        THE COURT:  THAT IS A FACTUAL ERROR.  IT APPEARS IT

5   WAS 56 YEARS, NOT 96.

6     DOES THE GOVERNMENT HAVE ANY OBJECTION TO STRIKING OR

7   AMENDING THE PROBATION REPORT TO REFLECT THE ACTUAL AGE?

8        MS. SERANO:  NO, YOUR HONOR.  NO OBJECTION.

9        THE COURT:  GREAT.  GOOD.  SEE, THAT WAS EASY.

10    WHAT ELSE DO WE HAVE TO TALK ABOUT?

11       MR. SCOTT:  CONDITIONS OF RELEASE, YOUR HONOR.

12       THE COURT:  ALL RIGHT.  SO LET'S TALK ABOUT THOSE.

13       MR. SCOTT:  I THINK THE MOST STARK ONE, THE MOST

14  LEGALLY TROUBLING ONE IS THE FACT THAT THIS IS NOT A SORNA

15  CASE.  I THINK THE GOVERNMENT WOULD AGREE WITH ME THAT THIS IS

16  NOT A SORNA CASE.  AND THE COURT OUGHT NOT IMPOSE THOSE

17  REGISTRATION REQUIREMENTS AND THE WHOLE PANOPLY OF OBLIGATIONS

18  AND RESTRICTIONS THAT GO WITH THAT.

19     THE PLEA AND THE OFFENSE THAT MR. LUSTIG ADMITTED TO WAS

20  FOR AN ENTIRELY DIFFERENT STATUTE, RACKETEERING STATUTE.  AND

21  BY THE VERY TERMS, AND I LAY THIS OUT IN THE WRITTEN PAPERS,

22  THIS IS A MATTER OF STRAIGHT STATUTORY APPLICATION.  SORNA DOES

23  NOT APPLY, SO WE DO OBJECT TO THAT.

24       THE COURT:  SO IF SORNA DOES NOT APPLY, WHAT DOES

25  THAT DO?  IT DELETES THE CONDITIONS 7 THROUGH 10.  AND THAT

1   GETS US BACK TO THE VERY SAME ISSUE WE JUST DISCUSSED, WHICH

2   IS, AGAIN, IF ALL THAT THE COURT CAN CONSIDER IS THE FACTUAL

3   BASIS THAT IS ADMITTED TO, AND IF ALL I CAN CONSIDER IS THE

4   OFFENSE, THEN RELEVANT CONDUCT GOES OUT THE WINDOW, RIGHT.  IT

5   MEANS THAT THE COURTS CAN NO LONGER CONSIDER RELEVANT CONDUCT.

6       BUT IF I LOOK AT RELEVANT CONDUCT IN THIS CASE, RIGHT,

7   CLEARLY THOSE FACTS -- I THINK MR. SCOTT WOULD DICTATE IMPOSING

8   THOSE TYPES OF CONDITIONS IT SEEMS TO ME.

9           MR. SCOTT:  I THINK THERE ARE TWO ISSUES THAT ARE --

10  THAT NEED TO BE PARSED OUT.  ONE IS SORNA ITSELF WITH THE

11  FORMAL REGISTRATION REQUIREMENTS AND THAT WHOLE BODY OF LAW,

12  THAT IS VERY SPECIFICALLY STATUTORY, SET FORTH IN 42, USC,

13  SECTION 16901, ET. SEQ.  SORNA IS OBVIOUSLY STRONG MEDICINE AND

14  REQUIRES A LIFETIME OF REGISTRATION AND A LIFETIME OF

15  MONITORING, AND IT CREATES ITS OWN CRIMINAL OFFENSE IF PEOPLE

16  DON'T COMPLY WITH IT.

17          THE COURT:  OKAY.

18          MR. SCOTT:  THE STATUTE GOVERNING SORNA SETS OUT

19  STATUTORILY AND SPECIFICALLY WHAT OFFENSES QUALIFY.  AND THAT

20  IS A PRETTY CLEAR MATTER OF STATUTORY APPLICATION.  SORNA IS

21  NOT A DISCRETIONARY TERM OF SUPERVISED RELEASE THAT THE COURT

22  CAN IMPOSE OR NOT IMPOSE.  NOW I WOULD CONCEDE THAT THERE ARE

23  SOME IN TERMS OF FOURTH AMENDMENT SEARCHES OR, YOU KNOW,

24  DIFFERENT CONDITIONS AND MONITORING WHERE I WOULD CONCEDE THAT

25  THE COURT HAS MORE DISCRETION.  AND I WOULD -- I'M ARGUING THAT

1  THE COURT OUGHT NOT EXERCISE ITS DISCRETION NECESSARILY IN EACH

2  OF THOSE CASES, BUT IN PARTICULAR, PARAGRAPH NO. 12 ON PAGE 22

3  OF THE PRE-SENTENCE REPORT REQUESTS AN OBLIGATION TO APPLY AND

4  BE REGISTERED UNDER SORNA, AND THAT WE OBJECT TO CATEGORICALLY

5  AND STATUTORILY.

6      THE OTHER ONES ARE MORE A MATTER OF THE COURT FASHIONING

7  APPROPRIATE SUPERVISED RELEASE CONDITIONS.  AND WE OBJECT TO

8  THOSE FOR MORE EQUITABLE OR FACTUAL REASONS.  BUT I THINK THE

9  LEGAL ARGUMENT UNDER SORNA IS PRETTY STARK, STATUTORILY

10  SPEAKING.

11          THE COURT:  SO TELL ME -- SO THE STATUTE ITSELF THAT

12  HE PLED TO DOES NOT FIT WITHIN --

13          MR. SCOTT:  THAT'S CORRECT.

14          THE COURT:  -- WITHIN SORNA, RIGHT?

15          MR. SCOTT:  THAT IS CORRECT.

16          MS. SERANO:  JUST FOR THE RECORD, YOUR HONOR, IT IS

17  NOT ON WHAT I WOULD CALL THE LAUNDRY LIST OF STATUTES UNDER

18  SORNA.  IT IS NOT ONE OF THOSE MANDATORY --

19          THE COURT:  RIGHT.

20          MS. SERANO:  -- ONES.

21          THE COURT:  RIGHT.  SO BUT DO I HAVE DISCRETION TO

22  IMPOSE OR TO REQUIRE SORNA?

23          MS. SERANO:  THERE ARE CERTAIN REQUIREMENTS THAT

24  SORNA REQUIRES A COURT TO LOOK AT TO DETERMINE WHETHER THE

25  PERSON IS -- HAS TO REGISTER AS A SEX OFFENDER OR NOT.

1    THE COURT:  WHAT ARE THOSE?

2    MS. SERANO:  WHETHER THE -- I DON'T HAVE THE STATUTE

3  IN FRONT OF ME.  I AGREE WITH MR. SCOTT, WE'RE NOT ASKING FOR

4  THE COURT TO IMPOSE REGISTRATION.  WHAT WE'RE ASKING, I THINK

5  THE WAY 12 IS WRITTEN, MAYBE IT IS NOT WRITTEN THE BEST WAY, IS

6  THAT IF A STATE -- BECAUSE WE TAKE NO POSITION ON WHETHER HE

7  HAS TO REGISTER UNDER STATE LAW.  THAT IS A COMPLETELY

8  DIFFERENT ANIMAL.  SO IF HE DOES HAVE TO REGISTER, THAT HE

9  COMPLY WITH IT.  BUT WE'RE NOT ASKING THE COURT TO IMPOSE

10  REGISTRATION.

11    THE COURT:  THAT MAKES SENSE, DOESN'T IT, MR. SCOTT?

12    MR. SCOTT:  WELL, OF COURSE THE FACT THAT HE HAS TO

13  COMPLY WITH FEDERAL, STATE, AND LOCAL LAWS IS EXPLICIT IN EVERY

14  SUPERVISED RELEASE CONDITION.  SO IF, IN FACT, THAT TURNS OUT

15  TO BE STATE LAW, HE HAS TO COMPLY WITH ALL STATE, FEDERAL, AND

16  LOCAL LAWS, WE'RE OBJECTING TO THE SORT OF SPECIFIC ITERATION

17  OF SORNA ITSELF.  BECAUSE AS MS. SERANO, I THINK, HAS CONCEDED,

18  IT IS INEXPLICABLE UNDER THE STATUTE OF CONVICTION.

19    THE COURT:  SO WHAT YOU'RE ASKING I DO IS STRIKE --

20    MR. SCOTT:  PAGE 22, PARAGRAPH 12.

21    MS. SERANO:  IT IS PROPOSED CONDITION NO. 12, YOUR

22  HONOR.

23    THE COURT:  I SAW THAT.

24    MS. SERANO:  AND I HAVE NO OBJECTION TO YOUR HONOR

25  STRIKING THAT.  IF HE DOES HAVE TO REGISTER, THAT WOULD BE PART

1  OF A STATE --

2          THE COURT:  I'LL ORDER, AND I VERY OFTEN DO, AS A

3  MATTER OF FACT, ORDER THAT THEY REGISTER IF REQUIRED BY THE

4  STATE.

5      ALL RIGHT.  SO YOUR OBJECTION, JUST TO BE SURE, MR. SCOTT,

6  IS THAT WE STRIKE PARAGRAPH NO. 12?

7          MR. SCOTT:  YES.

8          MS. SERANO:  OR NOT IMPOSE IT.

9          THE COURT:  AT PAGE 22?

10          MR. SCOTT:  YES.

11          THE COURT:  ALL RIGHT.  DONE.

12      OKAY.  SO WHAT ARE THE OTHER OBJECTIONS?

13          MR. SCOTT:  THE -- WE OBJECTED TO A BROAD-BASED

14  MONITORING OF ALL COMPUTER-RELATED ACTIVITY ON THE PART OF

15  MR. LUSTIG.  CERTAINLY THE COURT CAN REQUIRE THAT HE NOT VISIT

16  CERTAIN WEBSITES OR LOOK AT CERTAIN CONTENT, BUT I THINK THAT

17  THE WAY THAT IT IS PHRASED --

18          THE COURT:  AND HOW WOULD THAT BE ENFORCED?

19          MR. SCOTT:  WELL, I THINK I'D LEAVE THAT TO THE COURT

20  AND PROBATION.

21          THE COURT:  WELL, UNLIKE THE MAN PULLING THE LEVERS

22  IN THE *WIZARD OF OZ*, I DON'T HAVE ALL THE ANSWERS.  AND I DON'T

23  KNOW OF ANY OTHER WAY TO DO WHAT WE NEED TO DO IN THIS CASE

24  OTHER THAN TO IMPOSE THAT CONDITION.  SO ALTHOUGH I'LL STRIKE

25  PARAGRAPH 12 AT PAGE 22, I'M NOT INCLINED TO STRIKE THAT

1   PARAGRAPH.

2      SO WHAT IS NEXT?

3         MR. SCOTT:  JUST SO WE'RE CLEAR, MR. LUSTIG COULD

4   ACCESS THE INTERNET?  HE CAN USE A COMPUTER AND MODEM AND SUCH

5   AS PART OF EVERYDAY LIFE, NOT THAT ANYONE USES A MODEM ANYMORE,

6   BUT WIFI, OR THINGS OF THAT NATURE, BUT IT HAS TO BE SUBJECT TO

7   SOME SORT OF MONITORING?  WE'RE NOT CATEGORICALLY PRECLUDING

8   HIM FROM USING A COMPUTER, WHICH IS --

9         THE COURT:  I AGREE WITH THAT.  I THINK THAT

10  PRECLUDING HIM FROM USING A COMPUTER OR ANOTHER DEVICE,

11  ELECTRONIC DEVICE, WOULD BE OVERLY BROAD.  BUT SO LONG AS HE

12  DOES NOT USE A COMPUTER, OR OTHER ELECTRONIC COMMUNICATION

13  DEVICE, UNLESS, UNLESS IT HAS MONITORING SOFTWARE OR EQUIPMENT

14  ACCEPTABLE TO PROBATION.

15     SO IN OTHER WORDS, I WOULDN'T WANT HIM BORROWING A

16  FRIEND'S TELEPHONE, FOR EXAMPLE, CELL PHONE, OR COMPUTER, OR

17  GOING TO THE PUBLIC LAW LIBRARY AND ACCESSING A COMPUTER THAT

18  DOES NOT HAVE THE APPROPRIATE MONITORING SOFTWARE OR EQUIPMENT

19  SO THAT WE KNOW WHERE HE IS -- WHAT HE'S USING THOSE DEVICES

20  FOR.  SO THAT'S MY THOUGHT ON IT.

21     MS. SERANO, DO YOU HAVE ANY OBJECTION?

22         MS. SERANO:  I THINK NO. 4 READS THAT, THAT HE IS

23  ALLOWED TO USE A COMPUTER TO ACCESS THE INTERNET, OR ANOTHER

24  DEVICE THAT ACCESSES THE INTERNET, SO LONG AS IT IS MONITORED.

25  IT DOESN'T PRECLUDE HIM WHOLESALE FROM EVER GETTING ONTO THE

1   INTERNET.  IT JUST NEEDS TO BE A DEVICE THAT IS MONITORED.

2           THE COURT:  THAT MAKES SENSE TO ME.  I MEAN, I'M

3   WILLING TO HEAR FROM THOSE WHO MAY DISAGREE.  BUT THAT'S MY

4   TAKE ON IT.

5       SO WHAT IS NEXT?

6           MR. SCOTT:  I THINK THE GOVERNMENT AND THE DEFENSE

7   AGREE AND HAVE BOTH FILED OBJECTIONS TO A PLUS-FIVE INCREASE

8   THAT IS PROPOSED UNDER CHAPTER 4 OF THE GUIDELINES FOR A,

9   QUOTE/UNQUOTE, PATTERN OF ACTIVITY.  AND I THINK THE FACTUAL

10  BASIS DOES NOT ESTABLISH A PATTERN OF ACTIVITY.  WE MAY FIND

11  OURSELVES SLIPPING DOWN THE SAME RABBIT HOLE IF WE'RE TALKING

12  ABOUT PATTERNS OF ACTIVITY THAT THE GOVERNMENT ALLEGES

13  OCCURRED.  BUT I DO APPRECIATE THAT THE GOVERNMENT HAS FILED

14  INDEPENDENT OBJECTIONS, AND SO THAT PLUS 5 OUGHT NOT APPLY.

15          THE COURT:  YEAH, I WAS -- AS I INDICATED PREVIOUSLY,

16  I WAS NOT INCLINED TO USE A PATTERN OF ACTIVITY AS SOMETHING

17  THAT I WOULD TAKE INTO ACCOUNT.  I MEAN, I NOTED -- YOU KNOW,

18  AGAIN, IT TAKES ME BACK TO WHAT I SAID A FEW MINUTES AGO.  I

19  HAVE A PROBATION REPORT.  I'VE READ IT.  THE PROBATION REPORT

20  INDICATES THAT MR. LUSTIG AT ONE TIME WAS INVOLVED WITH SOME

21  18-YEAR-OLD GIRL, AS I RECALL, OR WOMAN, I GUESS AT 18 YEARS,

22  YOU'RE NO LONGER A GIRL.  AND I READ THAT REFERENCE.  AND THEN

23  I READ THE REFERENCE ABOUT HIS INVOLVEMENT BACK IN THE 80'S.

24      BUT NONE OF THAT, IN MY OPINION, FACTORS INTO THE FACTUAL

25  BASIS OF THIS OFFENSE.  AND SO I WASN'T INCLINED TO GO ALONG

1    WITH THAT.  AND SO, YEAH, I DON'T HAVE ANY PROBLEMS STRIKING

2    THE PATTERN OF ACTIVITY ENHANCEMENT.

3             MR. SCOTT:  VERY GOOD, YOUR HONOR.  THAT IS ALL THE

4    OBJECTIONS I HAVE.

5             THE COURT:  ALL RIGHT.  DID THE GOVERNMENT HAVE AN

6    OBJECTION TO -- AS I RECALL, THERE WAS ONE OBJECTION BY THE

7    GOVERNMENT, WASN'T THERE?

8             MS. SERANO:  YES, YOUR HONOR.  WE WANTED TO MODIFY

9    CONDITION NO. 7, WHICH IS ON PAGE 22, TO EXCLUDE HIS OWN

10   CHILDREN.  NO. 7 SAYS HE IS NOT TO HAVE --

11            THE COURT:  YOU WANT TO EXCLUDE IT?

12            MS. SERANO:  NO.  I WANT TO SAY THAT HE CANNOT HAVE

13   ACCESS OR SUPERVISED CONTACT WITH ANY CHILD, BUT HE CAN WITH

14   HIS OWN CHILDREN.  HE CAN -- HE CAN HAVE CONTACT WITH --

15            THE COURT:  YOU WANT TO MODIFY IT?

16            MS. SERANO:  YES, SIR.

17            THE COURT:  TO EXCLUDE HIS OWN CHILDREN?  BECAUSE AS

18   I RECALL, THERE IS NO EVIDENCE THAT HE EVER MOLESTED OR --

19            MS. SERANO:  RIGHT.

20            THE COURT:  -- YOU KNOW, DID ANYTHING WITH HIS

21   CHILDREN.

22            MS. SERANO:  TO PUT IT ANOTHER WAY, THAT HE WOULD BE

23   ALLOWED TO HAVE UNSUPERVISED ACCESS TO HIS OWN CHILDREN.

24         SO I WOULD MODIFY 7 TO READ:  NOT HAVE UNSUPERVISED

25   CONTACT WITH ANY CHILD UNDER THE AGE OF 18, EXCEPT FOR HIS OWN

1    BIOLOGICAL CHILDREN, UNLESS IN THE PRESENCE OF A SUPERVISING

2    ADULT, ETC., ETC.

3         THE COURT:  BRILLIANT MINDS THINK ALIKE BECAUSE

4    THAT'S EXACTLY WHAT I WROTE.  OKAY.

5         MS. SERANO:  AND THEN THE LAST THING, I WANTED AN

6    ADDITIONAL CONDITION ADDED THAT THE DEFENDANT NOT ASSOCIATE

7    WITH KNOWN PROSTITUTES OR LOITER IN AREAS KNOWN TO BE

8    FREQUENTED BY THOSE ENGAGED IN PROSTITUTION.

9         MR. SCOTT:  ON THAT ONE, YOUR HONOR, WE DON'T OBJECT

10   TO, YOU KNOW, NOT FREQUENTLY -- NOT FREQUENTING PROSTITUTES OR

11   USING THE SERVICES OF PROSTITUTES.  MR. LUSTIG HAS NO OBJECTION

12   TO A CONDITION LIKE THAT.

13        THE COURT:  HE CAN'T DO THAT ANYWAY.  IT WOULD BE A

14   VIOLATION OF THE CONDITION THAT SAYS, HE SHALL OBEY ALL LAWS,

15   RIGHT?

16        MR. SCOTT:  PRECISELY.  THE CONCERN IS, THE FREQUENT

17   AREAS -- I FORGET HOW THAT IS PHRASED -- KNOWN FOR

18   PROSTITUTION, I MEAN, THAT IS DIFFICULT TO DEFINE AND DIFFICULT

19   TO ENFORCE.  SO I WOULD HAVE TO OBJECT TO THAT ONE ON VAGUENESS

20   AND OVERBREADTH.  BECAUSE I THINK AN ARGUMENT COULD BE MADE

21   THAT REALLY ANY LOWER-INCOME AREA MAY BE KNOWN FOR, YOU KNOW, A

22   VARIETY OF CRIMINAL ACTIVITY, INCLUDING, PERHAPS, PROSTITUTION.

23   AND SO I DON'T THINK THAT THAT GIVES FAIR NOTICE TO SOMEBODY OF

24   WHAT KIND OF PLACES TO AVOID OR NOT AVOID.

25        THE COURT:  LET ME INTERRUPT YOU.  CERTAINLY,

1  CERTAINLY, IF HE WERE TO ENGAGE THE SERVICES OF PROSTITUTES, AS

2  YOU MENTIONED, HE WOULD BE VIOLATING THE CONDITION THAT HE OBEY

3  ALL LAWS, RIGHT?

4        MR. SCOTT:  RIGHT.

5        THE COURT:  NOW A CONDITION THAT WOULD PROHIBIT HIM

6  FROM ASSOCIATING WITH KNOWN PROSTITUTES, THAT PROBABLY IS NOT

7  AGAINST THE LAW, RIGHT.  BUT IT IS THE SORT OF CONDUCT OR

8  BEHAVIOR THAT COULD EASILY CAUSE HIM TO REVERT, IF YOU WILL,

9  BACK TO, YOU KNOW, THE TYPE OF BEHAVIOR WE DON'T WANT HIM TO BE

10 BEHAVING IN.

11     I AGREE WITH YOU WITH REGARDS TO THE LOITERING IN AREAS

12 KNOWN TO BE -- I MUST BE OVERLY NAIVE.  I LIVE OUT IN THE

13 COUNTRY.  I DON'T HAVE ANY IDEA WHAT AREAS ARE KNOWN -- ARE

14 THERE REALLY AREAS KNOWN -- BACK WHEN I WAS IN LAW SCHOOL, I

15 KNOW THAT THE GAS LAMP DISTRICT, I REMEMBER THAT, WAS KIND OF,

16 YOU KNOW, BUT ARE THERE REALLY AREAS THAT ARE KNOWN?  ARE THERE

17 LIKE SIGNS THAT YOU DRIVE, I MEAN, AND IT SAYS BEWARE OF

18 PROSTITUTES SOMEWHERE IN TOWN?  I AM BEING A LITTLE FLIP, BUT

19 I'M BEING QUITE HONEST WITH YOU.  REALLY?

20        MS. SERANO:  REALLY.  YES.  THERE ARE PLACES THAT ARE

21 KNOWN FOR PROSTITUTION.  SPECIFICALLY HERE IN SAN DIEGO, OUR

22 TRACK IS EL CAJON BOULEVARD, BETWEEN 33RD AND ALMOST THE 805.

23 AND IF YOU GO AT ANY PERIOD IN THE EVENING, YOU CAN SEE

24 INDIVIDUALS WHO ARE WALKING UP AND DOWN THE STREET FOR

25 PROSTITUTION.  EVERY CITY HAS THEM.  IN OCEANSIDE, IT IS NORTH

1    COAST HIGHWAY.  IN ESCONDIDO, IT IS THE SQUARE BLOCK OF

2    WASHINGTON.  AND I FORGOT THE OTHER STREET.  MY DETECTIVE IS

3    GOING TO YELL AT ME.  I SHOULD KNOW THAT.  BUT EVERY CITY HAS A

4    TRACK OR PLACE KNOWN FOR PROSTITUTION.

5        SO GIVEN MR. LUSTIG'S BEHAVIOR, I WANT TO MAKE SURE THAT

6    HE DOES NOT, AS YOUR HONOR SAID, REVERT BACK.

7           THE COURT:  THEY SHOULD POST THEM ON A WEBSITE

8    SOMEWHERE.

9           MS. SERANO:  THERE ARE.  MY DETECTIVE IS TELLING ME

10    THERE ARE SOME WEBSITES --

11           THE COURT:  SERIOUSLY, THAT TELL YOU, BEWARE, DO NOT

12    GO INTO THESE AREAS BECAUSE THEY'RE --

13           MS. SERANO:  YES.

14           THE COURT:  I'M NOT TRYING TO BE OVERLY NAIVE.  I

15    REALIZE THERE ARE PLACES.  AS I SAID, THE GAS LAMP USED TO BE

16    THAT WAY.  I WOULDN'T HAVE A CLUE.  YOU SAID EL CAJON?

17           MS. SERANO:  EL CAJON BOULEVARD.

18           THE COURT:  REALLY?

19           MS. SERANO:  REALLY.

20           THE COURT:  I THINK LEAVING IT, NOT ASSOCIATE WITH

21    PROSTITUTES, KNOWN PROSTITUTES, I THINK THAT IS SUFFICIENT.  I

22    THINK THE OTHER PART, IT IS JUST -- IT IS JUST TOO VAGUE.  I

23    AGREE WITH MR. SCOTT ON THAT.  YOU KNOW, IF HE GETS CAUGHT --

24    SO IF WHAT YOU'RE SAYING IS TRUE, IF EL CAJON BOULEVARD IS A

25    PLACE WHERE, YOU KNOW, THE WORKING GIRLS WORK, AND HE IS FOUND

1    THERE, AND HE'S FOUND TALKING TO ONE OF THEM, HE HAS VIOLATED

2    THE CONDITIONS OF SUPERVISED RELEASE, RIGHT.  HE HAS ASSOCIATED

3    WITH THEM, RIGHT?

4           MS. SERANO:  SO LONG AS IT IS A KNOWN PERSON ENGAGING

5    IN PROSTITUTION, YES.

6           THE COURT:  BUT IF HE HAPPENS TO BE DRIVING THROUGH

7    THERE, FOR EXAMPLE, TO GET FROM POINT A TO POINT B, I DON'T

8    KNOW, THAT JUST SEEMS --

9           MS. SERANO:  I DON'T KNOW IF THAT COUNTS AS

10   LOITERING, BUT I UNDERSTAND YOUR HONOR'S POINT.

11          THE COURT:  ALL RIGHT.  YEAH, I DON'T KNOW WHAT

12   LOITERING -- I'VE ALWAYS HAD A HARD TIME FIGURING OUT WHAT

13   LOITERING IS ANYWAY.  SO I WILL STRIKE THE LATTER PART, BUT I

14   WILL AGREE TO --

15          MR. SCOTT:  THANK YOU, YOUR HONOR.  IN LIGHT OF THAT

16   CONDITION, THE ONE SPECIFICALLY DEALING WITH PROSTITUTION, I

17   THINK THE ONE DEALING WITH ALL MINOR CHILDREN -- AND I DO

18   APPRECIATE THE MODIFICATIONS TO ACCOUNT FOR HIS OWN CHILDREN.

19   BUT I THINK IT IS IMPORTANT TO KEEP IN MIND THAT THE FACTS IN

20   THIS CASE ARE -- THAT ARE IN THE PLEA AGREEMENT AND THAT ARE --

21   THAT THERE IS EVIDENCE TO SUPPORT DON'T PAINT A PICTURE OF

22   SOMEBODY VICTIMIZING CHILDREN IN A NONCOMMERCIAL CAPACITY IF

23   YOU WILL.

24      THIS IS A PROSTITUTION CASE, OR IT IS DESCRIBED THAT WAY

25   FACTUALLY BY THE GOVERNMENT.  YOU KNOW, ADMITTEDLY, BEING UNDER

1    AGE IS A FACET OF THAT.  BUT I THINK BY PROHIBITING

2    PROSTITUTION AT ALL FOR ANY AGE, THAT ACHIEVES THE PURPOSES OF

3    SUPERVISED RELEASE.  I JUST DON'T THINK THERE IS EVIDENCE TO

4    SUPPORT THE NOTION THAT MR. LUSTIG IS A DANGER TO CHILDREN IN A

5    DIFFERENT CAPACITY THAN THAT, THAN THAT COMMERCIAL CONTEXT.

6         AND I THINK THAT IS A VERY ONEROUS AND SIGNIFICANT

7    CONDITION NOT TO BE ABLE TO, YOU KNOW, INADVERTENTLY FIND

8    YOURSELF IN THE COMPANY OF SOMEBODY LESS THAN 18, WHO IS NOT

9    YOUR CHILD, NOT TO GO AROUND SCHOOLS, NOT TO BE NEAR LIBRARIES,

10   THOSE THINGS ARE VERY SERIOUS AND ONEROUS CONDITIONS, AND

11   THEY'RE NOT SUPPORTED BY THE EVIDENCE.

12         THE COURT:  WELL, MS. SERANO, I ASSUME YOU HAVE A

13   DIFFERENT TAKE?

14         MS. SERANO:  HOW DID YOU GUESS?  YES, I DO.

15   YOUR HONOR, I THINK GIVEN THE FACT THAT THERE -- THAT THE

16   DEFENDANT BEING INVOLVED WITH VERY YOUNG MINOR FEMALES, WE'RE

17   TALKING THEY WEREN'T EVEN 13 YEARS OLD AT THE TIME.  AT LEAST

18   THE ONE IN THE FACTUAL BASIS, I BELIEVE SHE WAS 12 YEARS OLD

19   WHEN THIS ALL BEGAN.  I THINK THAT SUPERVISED RELEASE IS A WAY

20   TO MAKE SURE THAT THE DEFENDANT DOES NOT REVERT BACK OR GO DOWN

21   THAT PATH AGAIN.

22         AND CERTAINLY, IF HE HAS DEMONSTRATED SOME GOOD BEHAVIOR,

23   THAT PERHAPS PROBATION OR MR. SCOTT FOR MR. LUSTIG COULD COME

24   BACK AND SEEK MODIFICATION.  BUT I THINK RIGHT NOW, WHAT IS

25   BEFORE YOUR HONOR, I THINK THAT THE PROPOSED SUPERVISED RELEASE

1  CONDITIONS, SPECIFICALLY NO. 7 AND NO. 8, WOULD BE PRUDENT.

2            THE COURT:  YEAH.  YOU KNOW, IT'S SUCH A FINE LINE.

3  AND DO I REALLY WANT TO TAKE A RISK?  I DON'T THINK SO.

4      ANYTHING ELSE?

5            MS. SERANO:  NO, YOUR HONOR.

6            MR. SCOTT:  NO, YOUR HONOR.

7            THE COURT:  DID YOU WANT TO TRY TO TALK ME OUT OF MY

8  TENTATIVE?

9            MR. SCOTT:  CERTAINLY.  SO JUST SO THE RECORD IS

10 CLEAR, THE COURT IS NOT IMPOSING THAT LAST CONDITION?

11           THE COURT:  NO, I AM.  I AM IMPOSING IT.  I'M NOT

12 ABOUT TO TAKE THE RISK OF HAVING MR. LUSTIG BE AROUND MINORS.

13 AND HE CAN BE PERSUASIVE, AND I WOULDN'T WANT TO TAKE A CHANCE.

14 PART OF MY -- AS YOU KNOW, PART OF THE 3553(A) FACTORS AND THE

15 THINGS I HAVE TO CONSIDER IS PROTECTING THE PUBLIC.  AND I

16 DON'T THINK I SHOULD WAIT UNTIL AFTER SOMETHING BAD HAPPENS

17 WITH ANOTHER MINOR BEFORE I TAKE SOME PROACTIVE CONDUCT.  SO --

18 ALL RIGHT.

19           MR. SCOTT:  UNDERSTOOD.

20           THE COURT:  SO IS THERE -- UNLESS THERE IS ANYTHING

21 ELSE ABOUT THE OBJECTIONS -- OR THE CONDITIONS OF PROBATION AND

22 THE OBJECTIONS.

23           MR. SCOTT:  I THINK THAT RESOLVES THE OBJECTIONS.

24           THE COURT:  ALL RIGHT.

25           MR. SCOTT:  IN TERMS OF SENTENCING, YOUR HONOR, WE

1   HAVE RECOMMENDED THE 36-MONTH SENTENCE.  AND I SHOULD HAVE

2   POINTED OUT EARLIER, MR. LUSTIG DOES HAVE FAMILY HERE IN THE

3   COURTROOM.  HIS WIFE, AMEA, IS IN THE FRONT ROW, JUST WAVED TO

4   YOUR HONOR.  AND THEN A CLOSE FRIEND OF THE FAMILY, MICHAEL

5   FREEMAN, IS HERE AS WELL.  THERE WOULD BE -- MR. LUSTIG HAS AN

6   ADULT DAUGHTER, WHO I THINK FACTORED INTO THE SENTENCING

7   PAPERS.  HER NAME IS TIA LUSTIG.  SHE LIVES OUT ON THE EAST

8   COAST AND, IN FACT, IS CARING FOR SOME OF MR. LUSTIG'S CHILDREN

9   IN THIS CASE, HIS YOUNGER CHILDREN.  SO BECAUSE OF THOSE

10  OBLIGATIONS AND THE GEOGRAPHY, SHE'S NOT ABLE TO BE HERE.  BUT

11  SHE'S BEEN TREMENDOUSLY SUPPORTIVE THROUGHOUT THE ENTIRE CASE

12  AND HAS BEEN IN CLOSE CONTACT WITH ME ABOUT HER FATHER.

13      MR. LUSTIG IS 71 YEARS OLD.  I POINTED THAT OUT IN THE

14  SENTENCING PAPERS.  AND I THINK WHAT I'M ASKING THE COURT TO

15  CONSIDER IS, AT WHAT AGE SHOULD HE BE INCAPACITATED UNTIL, IN

16  TERMS OF HIS CUSTODIAL SENTENCE?  WE'RE SUGGESTING THAT TAKING

17  HIM OUT INTO HIS MID 70'S SHOULD SUFFICE, RATHER THAN TAKING

18  HIM INTO THE 80'S.  I THINK THAT WHAT WE TRIED TO SET FORTH IN

19  THE SENTENCING PAPERS WAS THAT MR. LUSTIG HAS DONE A TREMENDOUS

20  AMOUNT OF GOOD IN HIS LIFE.  I THINK THE FACT THAT HE STILL HAS

21  FAMILY STANDING BY HIM, DESPITE WHAT ARE REALLY, OF COURSE,

22  SERIOUS AND HORRIFIC ALLEGATIONS, SPEAKS VOLUMES, THE FACT THAT

23  PEOPLE -- PEOPLE WHO KNOW EVERYTHING AND ARE STILL ABLE TO

24  WRITE THOSE LETTERS AND DESCRIBE HIM IN THE WAYS THEY DID AND

25  TALK ABOUT HIS KINDNESS, HIS GENEROSITY, HOW HE HAS BEEN A

1    PROVIDER AND BEEN THERE, NOT JUST FOR HIS FAMILY BUT FOR THE

2    PEOPLE WHO HAVE BEEN IN HIS EMPLOY OVER THE MANY YEARS.

3        IT DOES SEEM CLEAR, BASED ON THE FACTUAL BASIS, THE

4    ALLEGATIONS, THAT THINGS REALLY DID KIND OF UNRAVEL, I THINK,

5    MENTALLY AND OTHERWISE FOR MR. LUSTIG IN AROUND 2007, 2008.

6    BOTH HIS BUSINESS IMPLODED AND FELL TO SHAMBLES, BUT ALSO I

7    THINK AS HIS HEALTH GREW WORSE -- WE DESCRIBED A TUMOR IN THE

8    LINING OF MR. LUSTIG'S BRAIN.  I AM NOT A BRAIN SURGEON, BUT I

9    THINK THE RISE OF THAT TUMOR AT THE SAME TIME AS THE RISE OF

10   HIS CONDUCT IS CERTAINLY INTERESTING.

11       AND AS HIS WIFE HAS POINTED OUT, SHE FEELS HE HAS NOT BEEN

12   HIMSELF SINCE AROUND 2007, 2008.  THERE IS NO SUGGESTION THAT

13   HE'S EVER HARMED HIS FAMILY OR EVER BEEN A DANGER TO HIS FAMILY

14   OR OTHERS FOR THAT MATTER.

15           THE COURT:  SO LET ME STOP YOU FOR A SECOND.  SO AS I

16   SOMEWHAT FLIPPANTLY SAID EARLIER, PERHAPS WE SHOULD SIMPLY HAVE

17   COURTS CONSIDER AT SENTENCING THE FACTS THAT ARE ADMITTED TO AT

18   THE PLEA OR THAT ARE HEARD AT TRIAL, RIGHT.  I SAID THAT

19   EARLIER BECAUSE IT CERTAINLY WOULD SIMPLIFY THINGS AND AVOID AN

20   AWFUL LOT OF PROBLEMS.

21       NOW I INDICATED PREVIOUSLY THAT I WOULD NOT TAKE INTO

22   ACCOUNT THE FACT THAT BACK IN 1980, THERE WAS AN ALLEGATION

23   THAT MR. LUSTIG HAD BEEN INVOLVED IN SOME OTHER ACTIVITY.

24   THERE WAS THIS 18-YEAR-OLD GIRL.  NOW -- AND I SAID I WOULD NOT

25   APPLY A PATTERN ENHANCEMENT TO THE SENTENCE.

1    BUT SEE, WHEN YOU -- THE REASON WHY SOME OF THIS BECOMES

2   PROBLEMATIC IS BECAUSE NOW YOU'RE POSING TO ME REASONS WHY

3   MR. LUSTIG HAS ENGAGED IN THIS BEHAVIOR.  AND ONE OF THE THINGS

4   YOU'RE SAYING TO ME, MR. SCOTT, IS THAT, WELL, SO HE MAYBE HAD

5   THIS BRAIN TUMOR IN 2007, AND HIS BEHAVIOR HAS CHANGED, WHICH

6   IS WHAT CAUSED HIM TO BE INVOLVED IN THE CONDUCT ARISING --

7   FROM WHICH THIS CASE ARISES.

8    BUT THEN WHAT DO I DO?  DO I SAY, WELL, I'M GOING TO

9   PRETEND THAT I DIDN'T HEAR ABOUT HIS OTHER BEHAVIOR IN THE

10   PAST, WHICH SOMEWHAT I THINK BELIES THE ARGUMENT THAT THIS IS

11   ALL A RECENT VINTAGE, YOU SEE?  SO HOW DO YOU ACCOUNT FOR THAT,

12   MR. SCOTT?

13        MR. SCOTT:  WELL, I HAVE TWO ANSWERS TO THAT.  THE

14   INFORMATION I'M SHARING WITH THE COURT COMES DIRECTLY FROM THE

15   SENTENCING LETTER THAT HIS WIFE WROTE.  AND I WAS QUOTING HER

16   AND DESCRIBING WHAT SHE HAS SEEN AS THE CHANGE IN HIS

17   PERSONALITY.  THE TUMOR IN THE LINING OF HIS BRAIN IS A MEDICAL

18   FACT THAT I'M DESCRIBING TO THE COURT.  THE FACT THAT THERE IS

19   NO EVIDENCE, WHATSOEVER, THAT HE'S EVER HARMED HIS FAMILY IS A

20   FACT THAT IS IN THE LETTERS.  I WOULD SAY --

21        THE COURT:  BUT HOW WOULD THAT BE ANY DIFFERENT, FOR

22   EXAMPLE, THAN IF I ALLOWED THE YOUNG LADY TO COME UP HERE AND

23   SPEAK TO ME, TO ESSENTIALLY TELL ME HIS BEHAVIOR IS

24   LONG-STANDING, IT IS NOT A RECENT VINTAGE, YOU SEE?  THESE ARE

25   ALL SORT OF -- THIS IS WHY I WAS SAYING THAT IF WE WERE ABLE TO

1   LIMIT OURSELVES TO THE FACTS IN THE PLEA, LIFE WOULD BE MUCH

2   SIMPLER.  BUT NOW YOU'RE ASKING ME TO TAKE HIS WIFE'S WORDS,

3   AND THE LETTERS, AND SOME MEDICAL RECORDS THAT I, FRANKLY,

4   HAVEN'T SEEN.

5       BUT ON THE OTHER HAND, YOU'RE SAYING TO ME, YOU KNOW, THE

6   FACT THAT WE HAVE A YOUNG LADY WHO SAYS THAT YEARS AGO, SHE WAS

7   A VICTIM OF MR. LUSTIG, YOU SHOULD DISCOUNT THAT, YOU SHOULD

8   NOT TAKE THAT INTO ACCOUNT, AND, IN FACT, YOU USED IT AS A

9   BASIS FOR CLAIMING A BREACH OF THE PLEA AGREEMENT, THERE IS

10  SOMETHING ABOUT THAT THAT IS INCONGRUENT IN MY THINKING.

11          MR. SCOTT:  I THINK THIS IS WHERE THE RUBBER MEETS

12  THE ROAD ON THE CLAIM OF BREACH.  THE GOVERNMENT LITERALLY, AS

13  I'M TAKING THE LECTERN HERE, COMES OVER AND -- EVEN THOUGH SHE

14  HAS BEEN SITTING IN COURT, APPARENTLY, ALL MORNING, COMES OVER

15  AND WHISPERS TO ME AS I SET UP AT THE LECTERN, BY THE WAY, SO

16  AND SO IS HERE FOR THAT, FOR YOUR OBJECTION ABOUT THE

17  30-YEAR-OLD CONDUCT.  THAT IS THE GOVERNMENT AFFIRMATIVELY

18  BRINGING THAT TO COURT AFTER FEEDING IT TO PROBATION IN THE

19  PRE-SENTENCE REPORT.  NOW THAT IS BEFORE I SAID A WORD IN TERMS

20  OF A SENTENCING PITCH, IN TERMS --

21          THE COURT:  ARE YOU SAYING, MR. SCOTT, THAT IF THE

22  GOVERNMENT AND PROBATION HAD NOT INSERTED THAT INTO THE

23  PRE-SENTENCE REPORT, YOU WOULD NOT HAVE BEEN ARGUING TO ME THAT

24  I SHOULD IMPOSE A 36-MONTH SENTENCE BECAUSE HIS WIFE SAYS HE'S

25  A WONDERFUL MAN, AND THAT HE'S HAD A GOOD LIFE, AND THAT SHE

1   SENDS ME A LETTER, AND THAT, IN FACT, YOU HAVE THIS MEDICAL

2   INFORMATION ABOUT THE TUMOR IN THE LINING OF HIS BRAIN?  ARE

3   YOU SAYING YOU WOULD NOT HAVE BROUGHT THAT TO MY ATTENTION?

4          MR. SCOTT:  NO.  AND THAT IS WHY THIS IS WHERE THE

5   RUBBER MEETS THE ROAD.

6          THE COURT:  YOU WOULD HAVE BROUGHT THAT TO MY

7   ATTENTION?

8          MR. SCOTT:  I WOULD HAVE MADE THE SAME SENTENCING

9   PITCH, I'M SURE.  AND THIS IS MY POINT EXACTLY.

10         THE COURT:  BUT IF THAT WERE THE CASE, THEN, BY NOT

11  PROVIDING THE COURT WITH INFORMATION ABOUT THE YOUNG LADY WHO,

12  APPARENTLY, WANTED TO TALK TO ME, THEN I REALLY WOULD HAVE

13  INCOMPLETE INFORMATION, WOULDN'T I?  I'D ONLY BE GETTING ONE

14  SIDE OF THE STORY, BUT THE OTHER SIDE OF THE STORY MAY BE

15  EQUALLY IMPORTANT TO MY DECISION-MAKING, WOULDN'T IT?

16         MR. SCOTT:  WELL, AGAIN, IT IS WELL AND GOOD FOR THE

17  COURT TO SAY, I'M NOT GOING TO CONSIDER THAT, AND THEN FOR THE

18  COURT NOW TO SAY, BUT A-HA, THIS SEEMS TO BE SOME TENSION WITH

19  WHAT YOU'RE SAYING.  THE COURT IS RIGHT.  YOU CAN'T PUT IT OUT

20  OF YOUR MIND, AND THE COURT IS CLEARLY NOT PUTTING IT OUT OF

21  ITS MIND AS I MAKE MY SENTENCING --

22         THE COURT:  NO, YOU'RE MISSING MY POINT.  I'M NOT

23  USING IT FOR PURPOSES OF DETERMINING WHETHER TO ENHANCE HIS

24  SENTENCE.  AND I'M NOT TAKING IT INTO CONSIDERATION FOR

25  PURPOSES OF DETERMINING -- IN OTHER WORDS, IT WAS NOT SOMETHING

1   I CONSIDERED IN COMING -- ARRIVING AT MY TENTATIVE.  BUT WHAT I

2   AM MENTIONING TO YOU, OR WHAT I'M EXPLAINING AND WHAT I'M

3   SAYING IS THE ODDITY IN OUR SYSTEM, IS THAT CERTAINLY YOU WOULD

4   AGREE THAT JUDGES SHOULD HAVE A WHOLE PANOPLY OF INFORMATION

5   ABOUT THE DEFENDANT BEFORE THE COURT IMPOSES A SENTENCE?  I

6   THINK THAT IS WHY WE HAVE A PROBATION DEPARTMENT THAT PUTS

7   THESE PROBATION REPORTS TOGETHER AND GETS THEM TO US.

8        BECAUSE, OTHERWISE, LIKE I SAID, THE THING TO DO IS TO

9   SIMPLY HAVE THE FACTS AND THE PLEA AGREEMENT AND MAYBE JUST THE

10  CRIMINAL HISTORY, BUT, OF COURSE, THAT CAN ALSO BE TROUBLESOME

11  AT TIMES, AND THEN AT JUDGMENT, IMPOSE A SENTENCE BASED ONLY ON

12  THE FACTS THAT LED TO THE PLEA.  THAT WOULD MAKE THINGS -- IT

13  WOULD CERTAINLY MINIMIZE THE AMOUNT OF LITIGATION THAT GOES ON,

14  RIGHT?

15       BUT YOU CAN'T JUST VERY WELL COME IN AND SAY TO ME, LOOK,

16  HE'S A WONDERFUL MAN, HE HAS BEEN A HARD WORKER, HE IS A GOOD

17  HUSBAND, AND OH, BY THE WAY, LOOK, HE HAS THIS MEDICAL

18  CONDITION, AND THEN SAY, BUT, JUDGE, YOU CAN'T CONSIDER THE

19  FACT THAT THERE ARE ALLEGATIONS THAT HE WAS INVOLVED IN SOME,

20  YOU KNOW, BAD BEHAVIOR IN THE PAST.  BECAUSE THAT WOULD GIVE

21  THE COURT SORT OF A, YOU KNOW, ONE-SIDED, UNFAIR VIEW OF THE

22  TOTALITY OF THE DEFENDANT, RIGHT?

23            MR. SCOTT:  YEAH, I THINK, PERHAPS, THE COURT IS

24  MISCHARACTERIZING A LITTLE BIT OVERBROADLY MY SPECIFIC

25  OBJECTION.  MY OBJECTION IS NOT TO A WELL-ROUNDED REVOCATION IN

1    THE PRE-SENTENCE REPORT.  THE COURT WILL NOTE I DID NOT OBJECT

2    TO THE ALLEGATIONS REGARDING THE 18-YEAR-OLD WOMAN, EVEN THOUGH

3    I THOUGHT THAT THAT WAS KIND OF FAR AFIELD AND A LITTLE BIT

4    UNFAIR TO DREDGE ALL THAT UP.  I DIDN'T OBJECT TO IT FOR

5    EXACTLY THE REASONS THE COURT SAID.  IF THE COURT -- THE

6    INFORMATION IS THERE.  THE COURT CAN MAKE OF IT WHAT IT WILL.

7         THE SPECIFIC OBJECTION I HAD TO THAT 30-YEAR-OLD CONDUCT

8    WAS THAT IT WAS UNRELIABLE, THAT IT WAS SELF-CONTRADICTORY.

9              THE COURT:  BUT WHY IS THAT ANYMORE RELIABLE?  I

10   MEAN, REALISTICALLY SPEAKING, WHY IS THAT ANYMORE -- ANY LESS

11   RELIABLE THAN WHEN I GET A LETTER FROM THE DEFENDANT'S WIFE,

12   WHO SAYS HE'S A WONDERFUL MAN, HE IS A HARD WORKER, ETC.?

13             MR. SCOTT:  IT IS UP TO THE COURT TO DECIDE THE

14   RELIABILITY.  I WAS ARGUING IT SHOULDN'T.  BUT IF I CAN FINISH

15   MY THOUGHT, HERE IS THE SPECIFIC OBJECTION IS, PROBATION CAN

16   SAY WHAT THEY'RE ENTITLED TO SAY.  THE GOVERNMENT CAN GIVE THEM

17   WRITTEN DISCOVERY AND SO FORTH.  BUT IT BECOMES A BREACH WHEN

18   THE GOVERNMENT DOES THE LEG WORK, BRINGS THE PERSON TO COURT,

19   AND IS AFFIRMATIVELY CHAMPIONING THAT INFORMATION AS PART OF

20   THE SENTENCING -- PART OF THE SENTENCING PROCEEDING.

21        IF PROBATION WANTS TO FIND A PERSON, THEY CAN FIND A

22   PERSON.  THE GOVERNMENT CANNOT.  AND THE REASON IS, WE HAVE A

23   CONTRACT.  AND THE CONTRACT IS, WE'VE AGREED ON A UNIVERSE OF

24   THINGS THAT ARE THE FACTS.  THOSE ARE WHAT WE'RE RELYING ON.

25   THAT IS THE SAME REASON THAT THE GOVERNMENT OBJECTED TO THE

1    PLUS-FIVE FOR PATTERN.  THE GOVERNMENT HAD A RIGHT IN THAT

2    INSTANCE.

3        BUT THEN THE GOVERNMENT HAS RESPECTFULLY SORT OF FORGOTTEN

4    THAT PORTION OF THE CONTRACT WHEN IT COMES TO ADVOCATING AND

5    SPONSORING THIS PERSON IN THE SENTENCING HEARING.  QUITE

6    LITERALLY, THE GOVERNMENT CANNOT ADVOCATE THAT KIND OF EVIDENCE

7    IN A SENTENCING HEARING LIKE THAT, NOT WHEN WE'VE AGREED ON

8    FACTS, NOT WHEN WE HAVE A PLEA AGREEMENT.

9            THE COURT:  IT WILL MAKE A REALLY INTERESTING ISSUE

10   ON APPEAL.  MAYBE WE'LL GET SOME DEFINITIVE LAW ON THE SUBJECT,

11   AND MAYBE THE COURT OF APPEALS WILL DECIDE THAT WE, THE

12   DISTRICT JUDGES, CAN APPOINT LAWYERS TO REPRESENT US AND TO

13   ADVOCATE THE POSITION FOR US.  THAT WILL TAKE THE GOVERNMENT

14   OUT OF THE PICTURE.  I DON'T KNOW.

15       GO AHEAD.  WHAT ELSE?

16           MR. SCOTT:  I THINK I'VE SAID MY PEACE, YOUR HONOR.

17   WE'RE STANDING BY OUR RECOMMENDATION, AND THE THINGS WE'VE

18   SUBMITTED IN SUPPORT OF SENTENCING.  WHEN THE COURT -- AFTER

19   THE COURT IMPOSES SENTENCE, WE'RE REQUESTING PLACEMENT IF THE

20   COURT IS OPEN TO A RECOMMENDATION.  AND UNDERSTANDING THAT IS

21   NOT AN ORDER, BUT IF THE COURT WOULDN'T MIND RECOMMENDING

22   TERMINAL ISLAND OR CLOSE THEREABOUTS, WE WOULD APPRECIATE IT.

23           THE COURT:  ALL RIGHT, MR. LUSTIG, YOU HAVE A RIGHT

24   TO ADDRESS THE COURT, SIR, BEFORE I IMPOSE SENTENCE.  IS THERE

25   ANYTHING YOU WANT TO SAY, SIR?

1          THE DEFENDANT:  ON ADVICE OF COUNSEL, NO.  THANK YOU

2    VERY MUCH.  I DO WANT TO SAY ONE THING, I'M SORRY.

3          MR. SCOTT:  MY ADVICE ISN'T ALWAYS FOLLOWED.

4          THE DEFENDANT:  I SIMPLY APPRECIATE THE TIME THAT THE

5    COURT HAS TAKEN IN HEARING THE ARGUMENTS WITH REGARD TO THE

6    MOTIONS.  AND ALSO THE -- IT HAS BEEN A REAL EDUCATION FOR ME,

7    I MUST SAY.  AND I WANT TO THANK THE COURT IN REGARD TO

8    ANYTHING ELSE ON ADVICE OF COUNSEL.

9          MR. SCOTT:  AND TO BE CLEAR, YOUR HONOR, THE REASON,

10   QUITE FRANKLY, IS BECAUSE THIS IS A CONDITIONAL PLEA.  AND SO

11   WE ARE APPEALING A NUMBER OF ISSUES.  AND SO IN THE EVENT THAT

12   THIS CASE COMES BACK, THAT'S WHY I'VE COUNSELED HIM THAT WAY.

13   HE IS NOT BEING TRUCULENT OR ANYTHING OF THAT NATURE.

14         THE COURT:  I UNDERSTAND.  IT IS A TACTICAL DECISION

15   THAT'S BEEN MADE, AND THAT IS WHAT LAWYERS AND CLIENTS DO.

16      DOES PROBATION HAVE ANYTHING ELSE?

17         PROBATION OFFICER:  KELLY PALMER, FROM PROBATION.

18   NOTHING FURTHER, YOUR HONOR.

19         THE COURT:  MS. SERANO, DO YOU HAVE ANYTHING ELSE?

20         MS. SERANO:  YOUR HONOR, I THINK I LAID OUT

21   EVERYTHING IN MY SENTENCING MEMORANDUM.  THE ONE THING I WANT

22   TO MENTION ABOUT THE FACT THAT THE -- THAT KRISTIN PAULEY IS

23   HERE, THE REPORTED VICTIM FROM THE 1980'S, IS THAT IN

24   MR. SCOTT'S OBJECTIONS TO THE PSR, HE GOES ON AND ON AND ON

25   ABOUT HOW IT IS UNRELIABLE, AND IT IS FOUR LEVELS OF HEARSAY,

1    AND ETC., ETC., ETC.  AND I KNOW YOUR HONOR EXCLUDED HER

2    TESTIMONY AT TRIAL UNDER 403, THAT IT WAS NOT PROBATIVE FOR THE

3    OFFENSE -- FOR THE OFFENSE NOW BUT WOULD HAVE GONE TO TRIAL

4    BEFORE YOUR HONOR.  BUT WE BROUGHT HER HERE JUST IN CASE THE

5    COURT DID WANT TO HEAR THAT, GIVEN THE OBJECTION THAT MR. SCOTT

6    FILED.

7        I STAND BY THE FACT THAT THE PLUS-FIVE FOR PATTERN

8    ACTIVITY SHOULD NOT BE APPLIED.  AND WE ABSOLUTELY STAND BY THE

9    108-MONTH RECOMMENDATION, WHICH IS WHAT I FILED IN MY

10   SENTENCING PAPERS.

11       MR. LUSTIG DEMONSTRATES HOW -- THE REASON WHY COMMERCIAL

12   SEXUAL EXPLOITATION IS A $32 BILLION INDUSTRY, AND 28 BILLION

13   OF THAT HAS TO DO WITH PROSTITUTION.  AND IT IS NOT JUST A

14   THIRD-WORLD PROBLEM.  IT HAPPENS HERE IN THE U.S.  AND I CITED

15   SOME STATISTICS ABOUT HOW PREVALENT IT IS.  NOT ONLY ARE THERE

16   PIMPS TRAFFICKING TYPICALLY WOMEN AND GIRLS, BUT THERE ARE ALSO

17   INDIVIDUALS, LIKE MR. LUSTIG, THAT ARE THE CUSTOMERS THAT FUEL

18   THAT INDUSTRY, WHICH IS WHY MR. LUSTIG WAS PROSECUTED, GIVEN

19   THE FACT THAT THE MINORS THAT WERE INVOLVED WERE VERY, VERY

20   YOUNG.  THESE WERE NOT 17 YEAR OLDS OR 16-YEAR-OLD GIRLS.  THE

21   FEMALE MENTIONED IN THE CONDITIONAL PLEA AGREEMENT, THE

22   ACTIVITY STARTED WITH MR. LUSTIG WHEN SHE WAS 12 YEARS OLD.

23            THE COURT:  I THOUGHT I READ SHE WAS 11?  WAS THAT

24   SOMEWHERE --

25            MS. SERANO:  THAT IS THE OTHER MINOR, YOUR HONOR.

1        THE COURT:  THAT IS THE OTHER?

2        MS. SERANO:  RIGHT.  HE PLED GUILTY TO USING A CELL

3   PHONE TO ENGAGE IN PROSTITUTION WITH A MINOR WHOSE INITIALS ARE

4   "AG," WITH A DATE OF BIRTH OF JANUARY OF '98.  SO THEY --

5        THE COURT:  I GOT MY VICTIMS MIXED UP.

6        MS. SERANO:  THAT VICTIM STARTED WHEN SHE WAS 12

7   YEARS OLD AT THE TIME, AND THE ACTIVITY CONTINUED TO WHEN SHE

8   WAS 13 YEARS OLD.  WHICH IS WHY, GIVEN THE FACT THAT MR. LUSTIG

9   ENGAGED IN THIS TYPE OF BEHAVIOR WITH THAT PARTICULAR MINOR,

10  WHO WAS VERY, VERY YOUNG, OVER A PERIOD OF TIME, WE'RE

11  RECOMMENDING 108 MONTHS IN CUSTODY, AS SET FORTH IN THE

12  GOVERNMENT'S SENTENCING MEMORANDUM.

13     AND I'M GOING TO -- I'M ASSUMING, BASED ON YOUR HONOR'S

14  COMMENTS, THAT YOU WILL NOT HEAR FROM THE VICTIM.  I'VE ALREADY

15  EXPLAINED THAT TO HER THAT --

16        THE COURT:  YEAH, I MEAN, I'D LOVE TO HEAR FROM HER,

17  BUT I THINK IT WOULD COMPLICATE THINGS.

18        MS. SERANO:  VERY WELL.  AND WITH THAT, I HAVE NO

19  OBJECTION TO WHATEVER SENTENCING PLACEMENT OR RECOMMENDATION

20  THAT COUNSEL WANTS FOR HIS CLIENT.

21        THE COURT:  ALL RIGHT, WELL, AS I THINK I SAID AT THE

22  BEGINNING OF THE HEARING, I'VE CONSIDERED ALL THE 3553(A)

23  FACTORS IN THIS CASE.  I UNDERSTAND THAT THIS WAS A CONDITIONAL

24  PLEA.  AND I UNDERSTAND THAT, YOU KNOW, THERE ARE CERTAIN

25  LIMITATIONS AS TO WHAT INFORMATION THE COURT CAN CONSIDER AND

1  WHAT IT CAN'T CONSIDER.  AND SOMETIMES THOSE LINES ARE RATHER

2  BLURRED.  BUT WHAT I DO KNOW FROM THE PLEA AGREEMENT AND THE

3  PROBATION REPORT IS THAT MR. LUSTIG, FOR WHATEVER REASON -- I

4  HEARD HIM SPEAK.  HE SEEMS LIKE AN ELOQUENT GENTLEMAN.  HE'S

5  ARTICULATE.  HE APPEARS TO BE SOMEONE WHO HAS HAD A SUCCESSFUL

6  WORK HISTORY.  HE'S A MARRIED MAN, WITH A FAMILY.  AND

7  APPARENTLY, HIS FAMILY, HIS DAUGHTER, WHO IS BACK EAST,

8  SUPPORTS HIM AND SO ON.

9       BUT, YOU KNOW, I LOOK AT THE RELEVANT CONDUCT IN THIS

10  CASE, AND I CAN'T HELP BUT SAY THAT THIS KIND OF BEHAVIOR

11  CANNOT BE TOLERATED.  IT CANNOT BE TOLERATED.  ONE OF SOCIETY'S

12  MAIN OBLIGATIONS IS TO PROTECT ITS CHILDREN, BY GOLLY.  AND WE

13  JUST CAN'T ALLOW PEOPLE TO GO AROUND DOING WHAT MR. LUSTIG WAS

14  DOING.

15       YOU KNOW, MS. SERANO, YOU MENTIONED THE FACT THAT THE GIRL

16  WAS NOT 16 OR 17.  AND I UNDERSTAND THAT, BUT 16 AND 17 IS

17  STILL A GIRL, NOT A WOMAN, STILL UNDER AGE.  AND THERE IS A

18  REASON WHY WE HAVE THESE AGE LIMITATIONS.  I SUBMIT THAT IF THE

19  GIRL HAD BEEN 16 OR 17, I DON'T KNOW THAT MY SENTENCE WOULD

20  HAVE BEEN ANY DIFFERENT.

21       WE COULD HAVE THE PHILOSOPHICAL DISCUSSION ABOUT WHETHER

22  OR NOT AN ADULT WOMAN COULD ENGAGE IN THIS KIND OF BEHAVIOR,

23  AND WHETHER OR NOT A MAN OR WOMAN SHOULD BE PROSECUTED OR

24  SENTENCED FOR ENGAGING IN THAT KIND OF BEHAVIOR WITH AN ADULT,

25  BUT THAT IS NOT MY ROLE HERE, AND THAT IS NOT WHAT I'M SUPPOSED

1    TO LOOK AT.  WHAT I AM SUPPOSED TO LOOK AT ARE THE 3553(A)

2    FACTORS.  IT INCLUDES THE DEFENDANT'S HISTORY, HIS

3    CHARACTERISTICS, WHAT TYPE OF SENTENCES ARE AVAILABLE TO ME,

4    WHAT CAN I DO TO PROTECT THE PUBLIC, AND WHAT CAN I DO TO HAVE

5    MY SENTENCE ACT AS A DETERRENT?  THE BEHAVIOR IN THIS CASE, IN

6    MY OPINION, IS PRETTY EGREGIOUS.

7        YOU KNOW, COMPARING THIS -- AND, OBVIOUSLY, I'M NOT SURE

8    THAT EQUIVALENCY WOULD APPLY.  BUT COMPARING THIS, FOR EXAMPLE,

9    TO AN INDIVIDUAL WHO SIMPLY POSSESSES CHILD PORNOGRAPHY, WHICH

10   I NOTE, MR. SCOTT, IN SEVERAL OF YOUR CASES THAT YOU CITED IN

11   YOUR OBJECTIONS AND YOUR BRIEF, DEALT WITH CHILD PORNOGRAPHY

12   CASES.  BUT ALTHOUGH I UNDERSTAND, I'VE BEEN INVOLVED NOW IN

13   SEVERAL CHILD PORNOGRAPHY CASES, THIS WAS NOT CHILD

14   PORNOGRAPHY.

15       THIS WAS NOT LOOKING AT AN IMAGE ON A COMPUTER OR ON THE

16   BACK OF A MAGAZINE.  THIS IS ACTIVELY ENGAGING IN SEXUAL

17   BEHAVIOR WITH A MINOR, AND THE METHOD BY WHICH HE ENGAGED IN

18   THAT BEHAVIOR.  AND SO I'VE LOOKED AT THE 3553(A) FACTORS.

19   I'VE LISTENED TO THE ARGUMENTS.  I'M NOT CONVINCED THAT A

20   LESSER SENTENCE THAN THE ONE THAT I STATED AT THE VERY

21   BEGINNING OF THIS HEARING, OF 120 MONTHS, WOULD -- AT LEAST IN

22   MY VIEW, SATISFY THE 3553(A) FACTORS.

23       SO AFTER CONSIDERING THE 3553(A) FACTORS, I'M SATISFIED

24   THAT A SENTENCE OF 120 MONTHS IS REASONABLE AND SUFFICIENT, BUT

25   NOT GREATER THAN NECESSARY.

1    SO I'LL REMAND HIM TO THE CUSTODY OF BUREAU OF PRISONS FOR

2    A PERIOD OF 120 MONTHS.  I'LL PUT HIM ON SUPERVISED RELEASE.

3         THE CLERK:  IT IS THREE COUNTS, JUDGE.  IS THAT

4    ALL --

5         THE COURT:  THAT'S RIGHT, IT IS THREE COUNTS.  SO

6    WHAT I'LL DO IS, I'LL IMPOSE 60 MONTHS ON COUNT 1; 48 MONTHS ON

7    COUNT 2 AND 3, AND RUN THOSE TWO CONCURRENT, BUT CONSECUTIVE TO

8    THE 60 MONTHS ON COUNT 1.

9         MS. SERANO:  YOUR HONOR, THAT IS 108 MONTHS THEN.

10        THE COURT:  I'M SORRY, MY MATH IS TERRIBLE.  I

11   APOLOGIZE.  SO YOU TWO ADD TWELVE MONTHS TO THAT.

12        THE CLERK:  TO WHICH ONE?

13        THE COURT:  THE MAXIMUM SENTENCE IS 60 MONTHS,

14   CORRECT?

15        MS. SERANO:  YES, YOUR HONOR.

16        THE COURT:  WE'LL CHANGE THAT.  I CAN -- 60 MONTHS ON

17   COUNT 1; 60 MONTHS ON COUNT 2; AND 48 MONTHS ON COUNT 3.  THE

18   SENTENCE ON COUNT 2 AND 3 WILL RUN CONCURRENT AND RUN

19   CONSECUTIVE TO COUNT 1, FOR A TOTAL OF 120 MONTHS.

20        I GUESS I SHOULD DO THE GUIDELINE CALCULATIONS, SINCE

21   THAT'S THE STARTING POINT FOR MY SENTENCE ANYWAY.

22        THIS, I BELIEVE, IS THE GUIDELINE THAT WAS -- RANGE THAT

23   WAS AGREED TO, AND I'M WILLING TO ACCEPT IT.  IT IS A BASE

24   OFFENSE LEVEL OF 24, INCREASED BY TWO LEVELS, UNDER

25   2G1.3(B)(3); INCREASED BY A FURTHER TWO LEVELS UNDER

1  2G1.3(B)(4); INCREASED FURTHER BY TWO LEVELS, UNDER

2  2G1.3(B)(2).  WHEN YOU LOOK AT THE MULTIPLE-COUNT ADJUSTMENT,

3  IT RESULTS IN A THREE-LEVEL INCREASE.

4      THE GOVERNMENT AGREED TO A THREE-LEVEL REDUCTION FOR

5  ACCEPTANCE OF RESPONSIBILITY.  HE HAS NO PRIOR CRIMINAL HISTORY

6  SCORE.  THAT PUTS HIM IN A CRIMINAL HISTORY CATEGORY 1, RESULTS

7  IN A GUIDELINE RANGE OF 97 TO 121 MONTHS.

8      ALL RIGHT, GETTING BACK TO SUPERVISED RELEASE.

9  UNFORTUNATELY, THE MAXIMUM PERIOD OF SUPERVISED RELEASE THAT I

10 CAN IMPOSE IS THREE COUNTS -- THREE YEARS.  SO I'LL PUT HIM ON

11 SUPERVISED RELEASE FOR A PERIOD OF THREE YEARS, TO RUN

12 CONCURRENT ON EACH COUNT.

13     AS A CONDITION OF SUPERVISED RELEASE, HE WILL OBEY ALL

14 LAWS, INCLUDING STATE, LOCAL, AND FEDERAL.  HE'LL ABIDE BY ALL

15 STATUTORY AND MANDATORY CONDITIONS OF SUPERVISED RELEASE,

16 INCLUDING THE FOLLOWING:  ONE, HE'LL PARTICIPATE IN A PROGRAM

17 OF MENTAL HEALTH TREATMENT AS DIRECTED BY THE PROBATION

18 OFFICER, AND HE SHALL TAKE ALL MEDICATIONS AS PRESCRIBED BY A

19 PSYCHIATRIST AND/OR PHYSICIAN AND NOT DISCONTINUE ANY

20 MEDICATION WITHOUT PERMISSION.

21     THE COURT AUTHORIZES THE RELEASE OF THE PRE-SENTENCE

22 REPORT AND AVAILABLE PSYCHOLOGICAL EVALUATIONS TO THE MENTAL

23 HEALTH PROVIDER AS APPROVED BY THE PROBATION OFFICER.

24     HE'LL ALLOW FOR RECIPROCAL RELEASE OF INFORMATION BETWEEN

25 THE PROBATION OFFICER AND TREATMENT PROVIDER.  AND HE'LL BE

1    REQUIRED TO CONTRIBUTE TO THE COSTS OF SERVICES RENDERED IN AN

2    AMOUNT TO BE DETERMINED BY THE PROBATION OFFICER BASED ON HIS

3    ABILITY TO PAY.

4         HE'LL REPORT ALL VEHICLES OWNED OR OPERATED, OR IN WHICH

5    HE HAS AN INTEREST, TO THE PROBATION OFFICER.  HE WILL SUBMIT

6    HIS PERSON, HIS PROPERTY, HIS HOUSE, HIS RESIDENCE, HIS

7    VEHICLE, HIS PAPERS, HIS COMPUTER, ELECTRONIC COMMUNICATIONS,

8    OR DATA STORAGE DEVICES OR MEDIA, AND EFFECTS TO SEARCH AT ANY

9    TIME, WITH OR WITHOUT A WARRANT, BY ANY LAW ENFORCEMENT OR

10   PROBATION OFFICER, WITH REASONABLE SUSPICION CONCERNING A

11   VIOLATION OF A CONDITION OF PROBATION, OR SUPERVISED RELEASE,

12   OR ANY UNLAWFUL CONDUCT, AND OTHERWISE IN THE LAWFUL DISCHARGE

13   OF THE OFFICER'S DUTIES.

14        HE'LL NOT USE OR POSSESS DEVICES WHICH HE CAN COMMUNICATE

15   DATA, VIA MODEM OR DEDICATED CONNECTION, THAT MAY NOT HAVE

16   ACCESS TO THE INTERNET WITHOUT PRIOR APPROVAL FROM THE COURT OR

17   THE PROBATION OFFICER, UNLESS SUCH DEVICES ARE, IN FACT,

18   EQUIPPED WITH APPROPRIATE MONITORING SOFTWARE OR OTHER DEVICE

19   THAT WILL ALLOW PROBATION AND/OR LAW ENFORCEMENT TO MONITOR HIS

20   ABILITY -- I'M SORRY, HIS USE OF SUCH DEVICE.

21        AND HE SHALL CONSENT TO THE INSTALLATION OF SYSTEMS THAT

22   WILL ENABLE THE PROBATION OFFICER TO MONITOR COMPUTER USE ON

23   ANY COMPUTER OWNED OR CONTROLLED BY THE OFFENDER, OR ANY OTHER

24   DEVICE.  I'M NOT LIMITING IT JUST TO COMPUTERS BECAUSE AS WE

25   ALL KNOW -- OF COURSE, ONE CAN ARGUE WHETHER OR NOT, FOR

1    EXAMPLE, AN I-PAD IS A COMPUTER.  ONE CAN ARGUE WHETHER OR NOT

2    AN I-PHONE OR SMART PHONE IS A COMPUTER.

3        SO ANY DEVICE THAT COMMUNICATES DATA, VIA MODEM OR OTHER

4    CONNECTION, SHALL REQUIRE THE INSTALLATION OF SUCH SOFTWARE

5    AND/OR HARDWARE TO ALLOW THE MONITORING OF HIS USE.  AND HE

6    SHALL PAY FOR THE COST OF INSTALLATION OF THE COMPUTER

7    SOFTWARE, SLASH, OTHER SOFTWARE AND/OR HARDWARE.

8        HE WILL NOT ASSOCIATE WITH, OR HAVE ANY CONTACT WITH, ANY

9    SEX OFFENDERS, UNLESS IN AN APPROVED TREATMENT AND/OR

10   COUNSELING SETTING.  HE WILL NOT HAVE ANY CONTACT, DIRECT OR

11   INDIRECT, EITHER TELEPHONICALLY, VISUALLY, VERBALLY, OR THROUGH

12   WRITTEN MATERIAL, OR THROUGH ANY THIRD-PARTY COMMUNICATIONS

13   WITH THE VICTIMS, OR VICTIMS' FAMILIES, WITHOUT PRIOR APPROVAL

14   OF THE PROBATION OFFICER.

15   HE WILL NOT HAVE UNSUPERVISED CONTACT WITH ANY CHILD UNDER

16   THE AGE OF 18, EXCEPT HIS OWN CHILDREN, UNLESS IN THE PRESENCE

17   OF A SUPERVISING ADULT, WHO IS AWARE OF THE DEFENDANT'S DEVIANT

18   SEXUAL BEHAVIOR AND CONVICTION AND WITH THE PRIOR APPROVAL OF

19   THE PROBATION OFFICER.

20       HE WILL NOT LOITER WITHIN 200 YARDS OF A SCHOOL,

21   SCHOOLYARD, PLAYGROUND, PARK, AMUSEMENT CENTER PARK, OR PARK,

22   PUBLIC SWIMMING POOL, ARCADE, DAYCARE CENTER, CARNIVAL,

23   RECREATION, RECREATION VENUE, LIBRARY, AND OTHER PLACES

24   FREQUENTED BY PERSONS UNDER THE AGE OF 18 WITHOUT PRIOR

25   APPROVAL OF THE PROBATION OFFICER.

1     HE WILL NOT POSSESS ANY MATERIALS, SUCH AS VIDEOS,

2   MAGAZINES, PHOTOGRAPHS, COMPUTER IMAGES, OR OTHER MATTER THAT

3   DEPICTS SEXUALLY EXPLICIT CONDUCT INVOLVING CHILDREN OR ADULTS,

4   AS DEFINED BY TITLE 18, SECTION 2256(2), AND WILL NOT PATRONIZE

5   ANY PLACE WHERE SUCH MATERIALS OR ENTERTAINMENT ARE THE PRIMARY

6   MATERIAL AVAILABLE.

7     HE WILL COMPLETE A SEX OFFENDER EVALUATION, WHICH MAY

8   INCLUDE PERIODIC PSYCHOLOGICAL OR PHYSIOLOGICAL TESTING, AND

9   COMPLETION OF THE ABLE ASSESSMENT, AT THE DIRECTION OF THE

10  COURT OR THE PROBATION OFFICER.

11    THE OFFENDER SHALL PARTICIPATE AND SUCCESSFULLY COMPLETE

12  AN APPROVED STATE-CERTIFIED SEX OFFENDER TREATMENT PROGRAM,

13  INCLUDING COMPLIANCE WITH TREATMENT REQUIREMENTS OF THE

14  PROGRAM.  AND HE WILL ALLOW FOR RECIPROCAL RELEASE OF

15  INFORMATION BETWEEN THE PROBATION OFFICER AND THE TREATMENT

16  PROVIDER.

17    HE'LL BE REQUIRED TO CONTRIBUTE TO THE COSTS OF SERVICES

18  RENDERED IN AN AMOUNT TO BE DETERMINED BY THE PROBATION

19  OFFICER, BASED ON HIS ABILITY TO PAY.  HE'LL RESIDE IN A

20  RESIDENCE APPROVED IN ADVANCE BY THE PROBATION OFFICER, AND ANY

21  CHANGES IN RESIDENCE SHALL BE PRE-APPROVED BY THE PROBATION

22  OFFICER.  AND HE WILL NOT HAVE ANY CONTACT, DIRECT OR INDIRECT,

23  EITHER TELEPHONICALLY, VISUALLY, VERBALLY, OR THROUGH

24  WRITTEN -- WAIT A MINUTE, I THOUGHT I ALREADY SAID THAT.

25        MS. SERANO:  IT IS STATED IN NO. 6, YOUR HONOR.

1          THE COURT:  YEAH, I THINK THAT IS A DUPLICATION.

2   NEVER MIND.  HOWEVER, I DO NEED TO ADD, I'LL IMPOSE A CONDITION

3   THAT WILL PROHIBIT THE DEFENDANT FROM ASSOCIATING WITH ANY

4   KNOWN PROSTITUTES.

5       NOW WITH REGARDS TO A FINE, LET'S SEE, WHAT IS PROBATION

6   RECOMMENDING?

7          MS. SERANO:  THEY'RE RECOMMENDING $10,000.  IT IS ON

8   PAGE 23, YOUR HONOR, OF THE PSR.  AND FOR THE RECORD, WE'RE NOT

9   RECOMMENDING A FINE.

10         MR. SCOTT:  MAY I SPEAK TO THAT BRIEFLY, YOUR HONOR?

11         THE COURT:  SURE.

12         MR. SCOTT:  MR. LUSTIG WAS ORIGINALLY REPRESENTED BY

13  FEDERAL DEFENDERS.  HE HAS NO LIQUIDITY.  HE HAS LITERALLY NO

14  MONEY.  AND THE REASON THAT THERE WAS AN OBJECTION TO HIM

15  CONTINUING TO BE REPRESENTED BY DEFENDERS IS BECAUSE OF ONE

16  PARCEL OF PROPERTY LEFT FROM HIS BUSINESS THAT WAS TO HIS NAME.

17  THE COURT SAID, LOOK, YOU HAVE THIS PROPERTY, YOU'RE NOT

18  ELIGIBLE.  I WAS HIRED.

19      THAT PROPERTY HAS BEEN LIQUIDATED.  MR. LUSTIG IS NOW

20  EFFECTIVELY PENNILESS.  SO WE WOULD ASK THAT NO FINE BE

21  IMPOSED.  THE REASON I GO THROUGH THAT STORY IS BECAUSE HE'S

22  STANDING HERE WITH RETAINED COUNSEL, BUT THERE IS A LITTLE BIT

23  OF A BACK STORY TO IT.  SO I CAN REPRESENT TO THE COURT THAT HE

24  REALLY HAS NO ASSETS.

25         THE COURT:  SO HOW MUCH DID THE PROPERTY SELL FOR?

1        MR. SCOTT:  IT IS BEING LISTED.  IT HASN'T SOLD YET.

2        THE COURT:  IT HAS NOT SOLD YET?

3        MR. SCOTT:  NO.  HE QUIT-CLAIMED IT, THOUGH.  HE NO

4    LONGER OWNS IT AT ALL.

5        THE COURT:  WHO DID HE QUIT CLAIM IT TO?

6      FOR THE RECORD, MR. SCOTT IS POINTING TO HIMSELF.  ALL

7    RIGHT.

8      WELL, THE GOVERNMENT IS NOT RECOMMENDING A FINE, SO I'M

9    NOT GOING TO IMPOSE A FINE.  I WILL ORDER, HOWEVER, THAT HE PAY

10   A $300 SPECIAL ASSESSMENT, $100 PER COUNT, ALL PAYABLE

11   FORTHWITH, OR IN INSTALLMENTS OF NOT LESS THAN $25 PER QUARTER,

12   PAYABLE THROUGH THE INMATE FINANCIAL RESPONSIBILITY PROGRAM.

13     LET ME BACKTRACK A SECOND.  BECAUSE I MAY HAVE JUST SAID

14   SOMETHING THAT I REACTED A LITTLE TOO QUICKLY TO.  NOT THAT I

15   NECESSARILY WANT TO OVER INTRUDE INTO YOUR FINANCIAL

16   ARRANGEMENTS WITH YOUR CLIENT, BUT WHAT IS THE PROPERTY -- WHAT

17   IS THE PROPERTY WORTH?  WHAT IS ITS FAIR MARKET VALUE?

18       MR. SCOTT:  IT HAS BEEN LISTED AT 175- FOR SOME TIME

19   AND HAS NOT SOLD.  IT HAS BEEN A NUMBER OF MONTHS.

20       THE COURT:  ABOUT $175,000?

21       MR. SCOTT:  YES, YOUR HONOR.  THE TAX ASSESSMENT IS

22   195-.  IT WAS LISTED AT 195-, BUT IT DID NOT SELL.  IT IS

23   LISTED AT 175-, AND IT HAS NOT SOLD.

24       THE COURT:  WHAT KIND OF PROPERTY IS IT, CAN YOU TELL

25   ME?

1    MR. SCOTT:  IT IS UNDEVELOPED LAND IN JULIAN.

2    THE COURT:  WHERE, IN JULIAN?

3    MR. SCOTT:  IN JULIAN.

4    THE COURT:  ALL RIGHT, WELL, I'M SATISFIED THAT NO

5    FINE SHOULD BE IMPOSED.

6    ALL RIGHT.  NOW I BELIEVE THAT THERE WAS A --

7    MS. SERANO:  YOUR HONOR, BEFORE YOU GO THERE, THERE

8    ARE TWO MODIFICATIONS I WANT TO REQUEST FOR THE SUPERVISED

9    RELEASE CONDITIONS.

10   THE COURT:  OKAY, MAYBE I MISSED SOMETHING.  GO

11   AHEAD.

12   MS. SERANO:  FOR NO. 5, IT CURRENTLY READS, "NOT

13   ASSOCIATE OR HAVE ANY CONTACT WITH ANY SEX OFFENDERS."  CAN WE

14   HAVE, "WITH ANY KNOWN SEX OFFENDERS"?

15   THE COURT:  SURE.  WE'LL DO THAT.

16   MS. SERANO:  AND THEN WITH NO. 8, IT'S THE, "NO

17   LOITERING WITHIN 200 YARDS OF A SCHOOL."  CAN WE HAVE THAT,

18   "THOSE PLACES THAT ARE PRIMARILY FREQUENTED BY PERSONS UNDER

19   THE AGE OF 18"?  THERE IS A NINTH CIRCUIT CASE THAT IS ON POINT

20   FOR THIS, THAT WE HAVE TO PUT THAT MODIFIER IN THERE --

21   THE COURT:  WELL, I DON'T WANT TO FILE --

22   MS. SERANO:  PRIMARILY --

23   THE COURT:  -- THE NINTH CIRCUIT IF I DON'T HAVE TO.

24   I DON'T ENJOY READING MY NAME IN PRINT.

25   ANYWAY, ALL RIGHT, WE'LL MAKE THAT MODIFICATION.

1    THE CLERK: ON NO. 8, WHAT WAS IT?

2    MS. SERANO: OTHER PLACES PRIMARILY FREQUENTED BY

3 PERSONS UNDER THE AGE OF 18.

4    THE COURT: I GUESS PROBATION SHOULD MAKE A NOTE OF

5 THAT.

6    PROBATION OFFICER: I HAVE.

7    THE CLERK: I GOT IT, JUDGE. IT WILL BE IN THE

8 JUDGMENT.

9    THE COURT: ALL RIGHT. LET'S SEE, I BELIEVE

10 MR. LUSTIG -- MR. SCOTT, IF YOU WOULD DO ME A FAVOR AND DELIVER

11 THE CONDITIONS OF SUPERVISED RELEASE TO MR. LUSTIG, I'D

12 APPRECIATE IT.

13    MR. SCOTT: MAY I APPROACH?

14    THE COURT: SURE.

15    ALL RIGHT, MR. LUSTIG, THOSE ARE THE CONDITIONS OF

16 SUPERVISED RELEASE. PLEASE REMEMBER THAT IF YOU VIOLATE ANY OF

17 THOSE CONDITIONS, SIR, YOU CAN BE PLACED IN CUSTODY FOR UP TO

18 AN ADDITIONAL THREE YEARS. THAT IS THREE YEARS OVER AND ABOVE

19 THE 120 MONTHS I JUST IMPOSED AND OVER AND ABOVE ANY OTHER

20 SENTENCE YOU MIGHT RECEIVE FOR ANY OTHER OFFENSE THAT YOU MIGHT

21 COMMIT.

22    NOW I BELIEVE THERE IS A WAIVER OF APPEAL AND COLLATERAL

23 ATTACK AS TO --

24    MS. SERANO: THE SENTENCE, YOUR HONOR, THE ONLY THING

25 THAT IS LEFT OPEN IS THE DENIAL OF THE MOTION TO SUPPRESS

1    EVIDENCE.  AND IT IS LISTED ON PAGE 2, SECTION 1(B) OF THE

2    CONDITIONAL PLEA AGREEMENT.

3           THE COURT:  I WOULD IMAGINE, HOWEVER, THAT THAT ALSO

4    DOES NOT APPLY TO MR. SCOTT'S CLAIM OF A BREACH OF THE PLEA

5    AGREEMENT.

6       I DON'T THINK THERE IS ANYTHING ELSE, IS THERE?

7           MR. SCOTT:  NO.  WE STAND BY THE PLEA, BUT I AGREE

8    WITH THE COURT'S ANALYSIS.  I THINK WHETHER THERE IS A BREACH

9    OR NOT IS SORT OF, BY DEFINITION, OUTSIDE OF THE PLEA

10   AGREEMENT.

11          THE COURT:  SO OTHER THAN THOSE TWO THINGS,

12   MR. SCOTT, DO YOU ACKNOWLEDGE HE'S WAIVED HIS RIGHT TO APPEAL

13   AND COLLATERAL ATTACK, EXCEPT WITH REGARDS TO THE MOTION TO

14   SUPPRESS, AND WHETHER OR NOT THERE WAS A BREACH OF THE PLEA

15   AGREEMENT AT THE TIME OF SENTENCING?

16          MR. SCOTT:  YES, YOUR HONOR.  WE STAND BY THE

17   CONDITIONAL PLEA.

18          THE COURT:  MR. LUSTIG, DO YOU AGREE THAT YOU'VE

19   WAIVED YOUR RIGHT TO APPEAL AND COLLATERAL ATTACK, EXCEPT WITH

20   REGARDS TO THE MOTION TO SUPPRESS AND/OR WHETHER OR NOT THERE

21   WAS A BREACH IN THE PLEA AGREEMENT?

22          THE DEFENDANT:  I AGREE.

23          THE COURT:  ALL RIGHT.  IN THAT CASE, IS THERE

24   ANYTHING ELSE WE NEED TO ADDRESS?  ANYTHING I'VE OVERLOOKED?

25   ANYTHING I'VE MISSED?  ANYTHING THAT WE SHOULD TALK ABOUT?

1          THE CLERK:  UNDERLYING INDICTMENT, JUDGE.

2          THE COURT:  IS THERE A MOTION TO DISMISS THE

3   UNDERLYING INDICTMENT?

4          MS. SERANO:  YES, YOUR HONOR.  AND YOU NEED TO ADVISE

5   HIM -- I DON'T KNOW IF YOU NEED TO TELL HIM OUTWARDLY THAT HE

6   HAS A RIGHT TO APPEAL THOSE, AND HE HAS 14 DAYS.  I KNOW

7   MR. SCOTT KNOWS THAT, BUT I DON'T KNOW IF WE NEED IT FOR THE

8   RECORD.

9          THE COURT:  YEAH.  WE PROBABLY SHOULD.  THANK YOU.  I

10  APPRECIATE YOU REMINDING ME OF THAT.

11      YES.  MR. LUSTIG, WITH REGARD TO THE TWO ISSUES THAT HAVE

12  BEEN RESERVED FOR APPEAL, IF YOU'RE GOING TO APPEAL, YOU MUST

13  FILE A NOTICE OF APPEAL WITH THIS COURT, NOT WITH THE NINTH

14  CIRCUIT.  IT MUST SPECIFICALLY STATE WHAT IT IS YOU'RE

15  APPEALING FROM.  YOU DO HAVE A RIGHT TO HAVE A LAWYER TO

16  REPRESENT YOU.  BUT, OF COURSE, YOU HAVE MR. SCOTT REPRESENTING

17  YOU.  AND THAT NOTICE MUST BE FILED WITHIN 14 DAYS OF TODAY'S

18  DATE, OKAY.

19      AND YOU HAVE GOT REALLY GOOD COUNSEL REPRESENTING YOU, SO

20  IF I'VE MISSED SOMETHING, HE'LL TELL YOU ABOUT IT, I'M SURE.

21      ALL RIGHT, ANYTHING ELSE?

22          MS. SERANO:  NO, SIR.

23          THE CLERK:  JUDGE, WAS THERE A PLACEMENT?

24          THE COURT:  YEAH, I THINK MR. SCOTT WAS ABOUT TO ASK

25  ME FOR PLACEMENT.

1          MR. SCOTT:  TERMINAL ISLAND IF THE COURT WOULD BE

2    AMENABLE.

3          THE COURT:  WELL, I'M ALWAYS RELUCTANT TO MAKE

4    SPECIFIC RECOMMENDATIONS, MR. SCOTT.  FIRST OF ALL, THE BUREAU

5    OF PRISONS HAS THEIR HANDS FULL.  THEY'RE OVERLY CROWDED AS IT

6    IS.  AND THEY ALSO KNOW WHAT -- YOU KNOW, WHAT PRISONS HAVE THE

7    TYPES OF PROGRAMS THAT BEST FIT THE DEFENDANT.  AND, OF COURSE,

8    SECURITY IS ALMOST ALWAYS AN ISSUE AS WELL.  SO I WILL

9    RECOMMEND IT, BUT I WILL NOT RECOMMEND IT AS PART OF MY

10   JUDGMENT, OKAY.  SO YOU KNOW.

11         MR. SCOTT:  OKAY.

12         THE COURT:  ANYTHING ELSE?

13         MS. SERANO:  NO, YOUR HONOR.  THANK YOU.

14         MR. SCOTT:  NO.  THANK YOU.

15         THE COURT:  IF NOT, THANK YOU VERY MUCH.

16    GOOD LUCK TO YOU, MR. LUSTIG.

17    THANK YOU, MS. SERANO.

18    THANK YOU, MR. SCOTT.  YOU TAKE CARE.

19                   (RECESS AT 10:55 A.M.)

20                        ---000---

21

22

23

24

25

1                          C-E-R-T-I-F-I-C-A-T-I-O-N

2              I HEREBY CERTIFY THAT I AM A DULY APPOINTED,

3     QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED

4     STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT

5     TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;

6     THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY

7     STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES

8     WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL

9     CONFERENCE.

10             DATED:  FEBRUARY 15, 2015, AT SAN DIEGO, CALIFORNIA

11

12                          _____
                            S/DEBORAH M. O'CONNELL, CSR #10563
13                          REGISTERED PROFESSIONAL REPORTER

14

15

16

17

18

19

20

21

22

23

24

25